IN RE the MARRIAGE OF:

Kathleen M. SCHMITT, Petitioner-Respondent,

v.

Arnold C. SCHMITT, Respondent-Appellant.

Court of Appeals

*No.  00–0695.  Submitted on briefs November 7, 2000.—Decided February 8, 2001.*

## 2001 WI App 78

(Also reported in 626 N.W.2d 14.)

568

On behalf of the respondent-appellant, the cause was submitted on the brief of *Scott B. Rasmussen* of *Rasmussen Law Offices,* Beaver Dam.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Julie M. Gay* of *Brenner, Brenner & Wall, LLP,* Waukesha.

Before Dykman, P.J., Deininger and Leineweber, JJ.[1]

¶ 1. DEININGER, J. Arnold Schmitt appeals a divorce judgment, contending that the trial court erred by awarding him too little maintenance for a too limited time period. We conclude that the trial court did not erroneously exercise its discretion in determining

---

[1] Circuit Judge Edward E. Leineweber is sitting by special assignment pursuant to the Judicial Exchange Program.

the amount or duration of maintenance. Accordingly, we affirm the judgment.

## BACKGROUND

¶ 2.    Arnold and Kathleen Schmitt filed this action for divorce in 1998, and a trial was held. They were married in 1960, and in 1978 they filed for divorce but reconciled. In 1991, they again filed for divorce, but the action was dismissed. On Arnold's request, Kathleen stayed with him to assist in dealing with the contaminated land that they owned. The divorce action subsequently filed in 1998 is the subject of this action.

¶ 3.    After getting married, Kathleen began her career as a stay-at-home mother, raising their four children. In 1976, she began working outside the home at Shopko, where she worked for almost twenty years. In about 1989, she embarked on part-time employment as a real estate sales agent, and in 1996, began doing this on a full-time basis. As of the date of trial, Kathleen worked seventy hours per week, and earned $6,475.63 gross and $3,744.63 net monthly income. As a real estate agent, she claimed numerous expenses, including $400 per month on clothing, and $900 per month on gifts and donations.

¶ 4.    Arnold began his career working at a gas station approximately sixty-five hours per week. He also took on a newspaper route to earn extra money. At some point, Arnold was compensated for his part-time position of alderperson. For the past sixteen years, Arnold has worked as a rural postal delivery worker. He works approximately twenty-nine hours per week (six days) for $15.36 an hour, plus $4.15 per hour for "equipment maintenance" on his vehicle. He does not receive any other benefits from the post office, including retirement or funded health insurance. He has had

problems with his back for several years. He testified that he never considered getting a second job. Arnold believed that his age and back injury would prevent him from getting a factory job, and that there is no job other than his current one where he could earn a comparable wage.

¶ 5.　Kathleen testified that she and Arnold had lived "separate lives" for much of their marriage.[2] They lived in the same house, but on different levels, and did not sleep together. Both had separate bank accounts, from which they made purchases at will. They shared some expenses: Arnold paid taxes on the house; Kathleen paid for most of the house maintenance, but they shared in fixing the roof; and they shared groceries, and took turns paying the electric bill. Kathleen moved out of the house in the year preceding the divorce trial.

¶ 6.　Arnold disagreed that he and his wife lived separate lives since 1991 because they did some socializing together, and they shared household expenses. Arnold testified that they had a mutual understanding that he did not want to socialize with her. He testified that he went to dinner with his wife four to six times in the two years before the divorce was filed.

¶ 7.　Based on the most recent financial information available, Arnold's accounting expert testified that Kathleen would have to pay Arnold $2,533 per month to equalize their incomes.[3] Kathleen did not present any accounting expert.

---

[2] Kathleen testified that after 1978, when the first divorce action was filed, she and Arnold lived separate lives; that as of 1981, she and Arnold lived "very, very separate" lives; and that as of 1991, after the second divorce action was filed, they lived "totally separate" lives.

[3] Shortly before the trial in August 1999, Kathleen filed an updated financial statement, which stated gross earnings of

¶ 8. At the time of the divorce trial in 1999, Kathleen was fifty-seven years old and Arnold was fifty-nine. The main issue at the trial was the amount and duration of maintenance to be awarded to Arnold. The parties had agreed to an equal property division. The trial court awarded Arnold maintenance of $500 per month for three years. Arnold appeals the judgment, citing the maintenance award as error. Additional facts relating to the appealed issues are included in the analysis that follows.

## ANALYSIS

¶ 9. The amount and duration of maintenance to be awarded is entrusted to the circuit court's discretion. *King v. King*, 224 Wis. 2d 235, 247, 590 N.W.2d 480 (1999); *Forester v. Forester*, 174 Wis. 2d 78, 85, 496 N.W.2d 771 (Ct. App. 1993). We will not reverse a discretionary determination absent an erroneous exercise of discretion. *King*, 224 Wis. 2d at 248; *Forester*, 174 Wis. 2d at 85. " '[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.' " *LaRocque v. LaRocque*, 139 Wis. 2d 23, 27, 406 N.W.2d 736 (1987) (quoted source omitted). To determine the amount of maintenance, the trial court must apply the facts to the relevant statutory factors. *Id.* at 31; *see* WIS. STAT. § 767.26 (1999–2000).[4]

---

$6,475.63 per month. Her financial statement from April 1998 showed a gross monthly income of $11,230.92.

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 10.  WISCONSIN STAT. § 767.26 lists a number of factors for a trial court to consider when determining the amount and duration of a maintenance award:

**(1)** The length of the marriage.

**(2)** The age and physical and emotional health of the parties.

**(3)** The division of property made under s. 767.255.

**(4)** The educational level of each party at the time of marriage and at the time the action is commenced.

**(5)** The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

**(6)** The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

**(7)** The tax consequences to each party.

**(8)** Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

**(9)** The contribution by one party to the education, training or increased earning power of the other.

**(10)** Such other factors as the court may in each individual case determine to be relevant.

These factors "are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective)." *LaRocque*, 139 Wis. 2d at 32–33.

¶ 11. Arnold requested that he be awarded $2,533 per month indefinitely, but the court awarded him $500 per month for three years. Arnold claims that the trial court erred in its decision regarding both the amount and duration of maintenance. We disagree.

¶ 12. In its oral decision, the court specifically referred to the maintenance provisions of WIS. STAT. § 767.26. After reviewing all of the statutory factors, the court summarized the reasoning for its maintenance decision as follows:

> This case is not about whether or not Mrs. Schmitt is female or whether or not Mr. Schmitt is a male. It's about what is fair and equitable as to both parties and the need of one of the parties and the ability of the other to pay and receive maintenance. . . .
>
> Again, this Court finds that a significant factor in this case is, although the length of the marriage is of a large number, I think the length should be discounted because of the actual living arrangements between the parties. In addition, I do think that Mr. Schmitt is a little bit underemployed. I'm not saying that he should—what he should do to get

a job because I don't want to tell anybody what to do to work. But he's only working 30 hours a week. . . .

However, the Court find[s] that maintenance is a proper award in this case taking into all consideration and the ability and the need of Mr. Schmitt. The Court awards Mr. Schmitt the amount of $500.00 per month for a period of three years . . . .

¶ 13. Arnold first asserts that the trial court "failed to follow the standard maintenance methodology required by law" because it did not begin by equalizing their incomes.[5] The starting point for a maintenance evaluation following a long-term marriage is to award the dependent spouse half of the total combined earnings of both parties. *Bahr v. Bahr*, 107 Wis. 2d 72, 85, 318 N.W.2d 391 (1982). This amount may then "be adjusted following reasoned consideration of the statutorily enumerated maintenance factors." *Id.* Here, the trial court did discuss equalizing the incomes, noting the unopposed calculation necessary to equalize incomes, but moved away from that

---

[5] Arnold also claims that the trial court failed to make findings regarding what Kathleen's income was. However, it is not clear that this was placed in issue at trial. As explained in footnote 3, Kathleen submitted an updated financial statement on the eve of trial. However, Arnold did not present any real objection to it as revealed by his counsel's statements in post-trial arguments:

> [A]t the trial, the accountant adjusted the figures on his computer, testified in court that it would take $2,533.00 per month to equalize the incomes. That's using her figures. I didn't even challenge any of the figures in her financial statement. I just used her figures. It would've been a lot higher than that if I would have spent the time to try to kick out some of her expenses from her financial statement.

If Arnold intended to make the amount of Kathleen's income an issue, he should have done so at trial.

figure right away because of the particular facts in this case, stating as follows:

> [I]n this particular case, Mrs. Schmitt does have the ability to pay some maintenance. Whether or not she has the ability to pay $2,533.00 a month is one question and whether or not Mr. Schmitt needs that amount of money is another. Now, I know that equalizing the income is something that one has to look at in a case like this but I also have to take a look at this is not your typical . . . 39-year marriage. These two people have lived basically separate lives for at least, as far as I can tell, 15 years out of 38 years or more, although at one point they both lived in the same house but came and went as they saw fit.

¶ 14.   Arnold also claims error because the court "did not make any findings in regards to the standard of living of the parties." A goal of maintenance is to maintain the standard of living the parties enjoyed during the marriage. *See Bahr*, 107 Wis. 2d at 83. In reviewing the court's oral decision, we conclude that the court did make findings regarding Kathleen's and Arnold's standards of living. The trial court based its decision on its assessment that they had lived separate lives for a substantial part of their marriage. Kathleen is a real estate agent, who is socially active, generous in her charitable donations, and feels compelled to spend considerable money on clothes to maintain her professional image. Arnold, on the other hand, is a rural postal delivery person, who is less social, and who does not spend much on clothes or other business-related items. Kathleen took several vacations over the eight months prior to the divorce trial, a total of eight trips costing approximately $15,000. By contrast, Arnold

only went on one vacation, costing $600–700, in the two years prior to the filing of this divorce action. These differences are clearly manifested in their different budgetary requests. A reasonable judge could conclude that the parties had different standards of living during their marriage.[6]

¶ 15. Arnold next contends that the trial court erred by "fail[ing] to apply standard statutory factors to this case, instead it discounted the length of the marriage due to the fact that the parties did not sleep with each other in the same bedroom." We conclude that the trial court did not fail to apply the statutory factors in this case.

■

¶ 16. The court explicitly referred to WIS. STAT. § 767.26, and it expressly considered the statutory factors: (1) length of marriage: 38 years; (2) age and physical and emotional health of parties: comparable; (3) division of property: parties agreed to equal distribution; (4) educational level of each party: comparable (high school); (5) earning capacity of party seeking maintenance: slightly underemployed; (6) feasibility that party seeking maintenance can become self-supporting at standard of living reasonably comparable to

---

[6] Arnold also notes that the trial court awarded him the same amount as the family court commissioner had ($500 per month). He asserts that "[t]his shows the trial court did not want to think about or deal with the facts of this case. Instead it just followed blindly the previous temporary order." We disagree. Simply because the trial court awarded the same monthly dollar amount for maintenance as the family court commissioner does not mean that the court abdicated its responsibilities. As explained in this opinion, the court did review the facts and factors, and came to a conclusion that a reasonable judge could reach.

standard enjoyed during marriage: they lived separate lives, different lifestyles during the marriage; (7) tax consequences: Kathleen would pay taxes on any property division equalization out of her funds; (8) contribution of one to education, training or increased earning power of other: "There wasn't a significant amount of that done here."; (9) mutual agreements made before or during marriage: none, except in action;[7] (10) other factors as the court deems relevant in individual case: the trial court discounted the length of the marriage because they "lived basically separate lives for at least . . . 15 years."[8] The court weighted the last factor as the most significant.

¶ 17.  Based on Kathleen's testimony, the trial court found that she and Arnold lived separate lives for several years prior to the divorce action at issue. We will not disturb this finding of fact because it is not clearly erroneous, that is, against the great weight and preponderance of the evidence. WIS. STAT. § 805.17(2); *Siker v. Siker*, 225 Wis. 2d 522, 527–28, 593 N.W.2d 830 (Ct. App. 1999). Arnold points to evidence that they had not lived separate lives because they lived under one roof and shared expenses. However, there was also evidence, as explained above, that they led very separate and quite different lives. It is not accurate to say

---

[7] The court stated as follows:

Matter of fact, I don't think that there was any discussion between you [Kathleen] and Mr. Schmitt as to what you should do with your money. You both have been living separate lives here for so long so you have learned to put your money in your checking account and do what you will with it as if you weren't married and so has Mr. Schmitt.

[8] The court noted that increases in the marital estate occurred largely during the time period that Arnold and Kathleen lived separate lives.

that the trial court simply discounted the length of the marriage because the parties did not sleep with each other in the same bedroom. In fact, the court did not mention that fact in rendering its decision. The court's focus was on the parties' separate finances and the apparent lack of any contribution by Arnold to Kathleen's earning capacity.

¶ 18.   Arnold objects strongly to the "living separate lives" evidence, claiming it is not relevant because "it is not a statutory factor under WIS. STAT. § 767.26." While not one of the specifically enumerated statutory factors, the court considered it under the broad catchall provision of WIS. STAT. § 767.26(10) (other factors as the court deems relevant). It was not impermissible for the court to consider the current and long-standing living arrangements and lifestyles of the parties. Indeed, the court's award appears to implement what the parties had already agreed to in practice during their marriage. "Under subsection (10) a circuit court may consider '[s]uch other factors as the court may in each individual case determine to be relevant.' This broad 'catchall' provision exemplifies the flexibility that a circuit court has in crafting a fair and equitable remedy." *Meyer v. Meyer*, 2000 WI 132, ¶ 45, 239 Wis. 2d 731, 620 N.W.2d 382 (Abrahamson, C.J., concurring). Moreover, "[s]ound discretion in maintenance determinations must reflect consideration of the factors set out in WIS. STAT. § 767.26, but the factors in the statute do not appear to be weighted, implying that the weighting will be done by the circuit court." *Id.* at ¶ 49 (Prosser, J., concurring). We conclude that the trial court did not err in considering the "separate lives" evidence under subsection (10) and choosing how much weight to place on that factor.

¶ 19. Arnold disagrees with the trial court's finding that he is slightly underemployed. While we acknowledge that Arnold testified that he could not work more than thirty hours per week due to his back problems, the court found that his physical condition was no worse than the usual problems of a person his age, and that he could have attempted to find a second job. Arnold testified that he did not even consider getting a second job. It is not unreasonable for the trial court to expect him to attempt to seek additional employment within his abilities. As the *Bahr* court noted, "[w]hen the dependent party is capable of accepting reasonably available, gainful employment, we do not believe the dependent party can avoid such employment and simply rely upon the supporting party to provide a standard of living for the dependent party comparable to that enjoyed during the marriage." *Bahr*, 107 Wis. 2d at 83.

¶ 20. Arnold also argues that it was improper for the trial court to consider whether Kathleen possessed an incentive to continue to work hard. The court stated: "I've been here long enough to know that when a court makes a decision in any area, especially in the area of maintenance . . . you do have to give the person who is paying some sort of incentive to continue to work as hard as they're working in order that they have to pay anything." Perhaps this is not a statutory factor, but it is a practical concern that plays into the fairness factor. The *Bahr* court observed as follows:

> In considering the amount of any maintenance award, the court should ensure that the award to the dependent party should not be so great a portion of the supporting party's income so as to thwart the

supporting party's incentive to be productive and advance in the job market. *The reasonableness of the dependent party's taking employment and the impact of the maintenance award on the supporting party's job incentive are factors which must be weighed along with the other statutory factors.*

*Bahr*, 107 Wis. 2d at 83–84 (emphasis added). Kathleen is working many extra hours, while Arnold is choosing to work only thirty hours a week. The court reasoned that it would not be fair, absent other factors, to order her to pay a substantial amount of maintenance, and we conclude that it did not erroneously exercise its discretion in this regard.

■

¶ 21.   Arnold further asserts that the trial court engaged in gender discrimination in its decision as reflected in "the one-sided nature of the court's thinking in this case." The court specifically disavowed gender bias. Simply because Kathleen was not ordered to pay as much maintenance as Arnold requested does not mean that the court was biased against him based on his gender. The court concluded that this was not a "traditional" marriage, where one party develops a stream of income as the principal wage earner, while the other contributes to the marriage primarily as a homemaker. *See LaRocque*, 139 Wis. 2d at 38. Here, Kathleen was the primary homemaker for approximately sixteen years of the marriage, and then she worked at Shopko for twenty years. She also began a career in real estate sales, which she is now doing full-time, working seventy hours per week and earning a substantial income. The court found that Kathleen's real estate career developed while the parties were essentially living separate lives. In the court's view, these circumstances simply did not merit a substantial

amount of maintenance for Arnold. We find no support in the record for Arnold's claim of gender bias.

¶ 22. Finally, Arnold claims that the trial court erred in granting maintenance for only three years. He argues that there was no rational basis to limit the maintenance award to three years, and that the court should have awarded him maintenance indefinitely. Arnold contends that there was no evidence that he would become self-supporting in three years. He also insists that "[i]t is not fair for Kathleen Schmitt to be able to live a lavish lifestyle while [he] has to live frugally."

¶ 23. The trial court cited several reasons in support of limited-term maintenance. First, the court specifically noted in its decision that Arnold could request continued maintenance at a future date, if necessary.[9] Second, limited maintenance can serve many purposes, including an opportunity for the recipient spouse to become self-supporting within that period of time, as well as an incentive to seek employment. *LaRocque*, 139 Wis. 2d at 40–41. The court found that Arnold was slightly underemployed. In this case, the limited maintenance provides Arnold with an incentive to seek additional employment. Third, Arnold's counsel acknowledged that in three years Arnold would receive social security benefits. Fourth, both parties received retirement benefits in the property division.

---

[9] The court stated as follows:

> The Court is not unmindful of the fact that any award of maintenance on a temporary basis could potentially lead to a permanent basis because, as we all are aware, if someone comes back to court before the temporary maintenance runs out and asks for it to be continued, the Court has the authority to continue it. That's why I took that into consideration in doing what I'm about to do.

¶ 24.  Arnold also contends that maintenance should be indefinite based on the length of the marriage and on the circumstances of the parties. He was fifty-nine years old at the time of the divorce, close to retirement age, and had back problems. However, as explained above, the court discounted the length of the marriage because the parties had lived separate lives for several years of the marriage. The trial court also determined that Arnold's health problems were typical of persons his age.

¶ 25.  In summary, we agree with Kathleen that the trial court's maintenance award is sustainable as a discretionary act because the court considered the relevant facts, applied the correct law, and reached a conclusion that a reasonable judge could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). We cannot conclude that $6,000 per year for three years failed to satisfy both the support and fairness objectives of maintenance. A trial court's discretionary determination of the amount and duration of maintenance to be awarded may encompass a result "which another judge or another court," including this one, might not have reached on the present facts. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Nonetheless, if it is a result "which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning," we will not disturb it. *Id.*

## CONCLUSION

¶ 26.  For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.