Donald R. Kustelski, Plaintiff-Appellant,

v.

Robin L. Taylor and Liberty Mutual Insurance Co., Defendants-Respondents.

Court of Appeals

*No. 02–2786. Oral argument July 15, 2003.—Decided August 5, 2003.*

2003 WI App 194

(Also reported in 669 N.W.2d 780.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Shawn M. Govern* of *Petrie & Stocking, S.C.*, of Milwaukee. There was oral argument by *Shawn M. Govern*.

On behalf of the defendants-respondents, the cause was submitted on the joint brief of *Thomas A. Cabush* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee, on behalf of Robin L. Taylor, and *Kirk Van Buskirk*, of *Law Offices of Stilp & Cotton*, of Milwaukee, on behalf of Liberty Mutual Insurance Co. There was oral argument by *Thomas A. Cabush*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J.   Donald R. Kustelski appeals from the circuit court judgment granting partial summary judgment to Robin L. Taylor and her insurer, Liberty Mutual Insurance Co. (collectively, "Taylor"), and dismissing his claims for negligence and abuse of process.[1] Kustelski argues that:   (1) the court erroneously exercised discretion in even entertaining Taylor's motion for partial summary judgment because Taylor failed to serve her motion by the deadline set in the scheduling order; (2) the court erred, as a matter of law, in basing its dismissal of his negligence claim on his no-contest plea in the related criminal case; and (3) the

---

[1] Kustelski's complaint also included a claim for defamation. In the course of summary judgment proceedings, however, Kustelski withdrew that claim. Because the defamation claim does not affect any of the issues in this appeal, our decision will not make any further reference to it.

court erred in dismissing both the negligence and abuse-of-process claims because material factual issues remain.

¶ 2. We conclude that, despite Taylor's failure to serve her motion for partial summary judgment by the deadline, the court did not erroneously exercise discretion in considering it. We also conclude that the court correctly granted partial summary judgment dismissing the abuse-of-process claim. Finally, however, we conclude that because material factual issues remain, the court erred in dismissing Kustelski's negligence claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings on Kustelski's negligence claim.

## I. BACKGROUND

¶ 3. According to the summary judgment submissions, on the afternoon of July 4, 1998, Taylor and Kustelski were driving their cars on Good Hope Road in Brown Deer when they collided. Kustelski's car was a 1970 Chevrolet Nova SS, which Kustelski considered a "nostalgic pro street car." Commonly referred to as a "hotrod," the car had been substantially modified. It had no horn, speedometer, or turn signals, and it was specially equipped with "straight-arm" steering, oversized tires, a 454 cubic engine, and nitrous oxide boosters (which, Kustelski said, were inoperable at the time of the accident).

¶ 4. The collision propelled Taylor's car into a parked car; her car was totaled and she was injured. At the time of the accident, Kustelski was an unlicensed and uninsured driver with an extensive traffic record. Taylor maintained that Kustelski was driving more than one hundred miles per hour and approached her so suddenly from the rear that she could not get out of his

way. Kustelski admitted that he was speeding; he said, however, that he was driving between forty-five and fifty-five miles per hour in a forty-mile-per-hour zone. He contended that although he was driving "slightly faster than the flow of traffic," the accident occurred because Taylor suddenly drove into his lane without signaling. A witness at the scene said that Taylor "reeked" of alcohol; Taylor denied being under the influence.

¶ 5. Six days after the accident, Taylor wrote a letter to Milwaukee County District Attorney E. Michael McCann:

> On the fourth of July, I was hit by a hotrod going at least 100 miles per hour and I lived to tell about [it]. While that may sound like a catchy promotional line for a news story—the experience has been anything but thrilling. At the time of the accident, I was driving down a city street going the speed limit when, in my rear-view mirror, I spotted the hotrod flying at me at well over 100 miles per hour. I couldn't get out of the way in time and was struck from behind. The impact sent my car into a parked vehicle and eventually a fence. I am fortunate! I survived the crash!

> It turns out, the vehicle that hit me was not street legal. It was a pro-stock drag racing car with nitrous oxide boosters—and the man behind the wheel was not a teenager —he was 33–years-old. I urge your office to take this case seriously. This is not a simple case of reckless driving that you can blame on youthful innocence, or for that matter youthful foolishness. This is a case of reckless endangerment!

> When he hit the nitrous oxide booster—he might as well have pulled the trigger on a gun—for the impact is the same. His vehicle hit mine with deadly force. I can only thank God that the safety restraints in my vehicle saved my life.

It has been a week since the crash and I am still recovering from my injuries. My hope is that the legal system will treat this case seriously.

Sincerely,

Robin Taylor

Fox Six News Anchor & Reporter

¶ 6. On August 19, 1998, the District Attorney's Office charged Kustelski with second-degree recklessly endangering safety, in violation of WIS. STAT. § 941.30(2) (1997–98).[2] More than two years later, on October 16, 2000, pursuant to the District Attorney's Office's request for a victim impact statement, Taylor wrote a letter to Circuit Court Judge M. Joseph Donald, before whom Taylor's criminal case still was pending. In that letter, Taylor described the accident, her injuries, and her financial costs, and concluded: "I know that you cannot change what has happened. You can't right the wrong—but you can see to it that Mr. Kustelski is punished. I hope, while he is sitting in jail, away from friends and family, that he thinks about what he has done. And I pray he never does it again to anybody else." Taylor made no reference to her employment position.

¶ 7. On June 21, 2001, Kustelski pled no contest to an amended charge of endangering safety by use of a dangerous weapon, in violation of WIS. STAT.

___

[2] WISCONSIN STAT. § 941.30(2) provides: "SECOND-DEGREE RECKLESSLY ENDANGERING SAFETY. Whoever recklessly endangers another's safety is guilty of a Class E felony." All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

§ 941.20(1)(a) (1997–98).[3] Judge Donald imposed the maximum sentence of nine months in the House of Correction, stayed the sentence, and placed Kustelski on probation for one year with conditions, including payment of restitution and a $300 fine, and incarceration for ten days with Huber release privileges. Following a restitution hearing three months later, Judge Richard J. Sankovitz ordered Kustelski to pay Taylor restitution of $730—$230 for replacement of the glasses, watch, and purse damaged in the accident, and $500 for the deductible of her insurance. The court declined, however, to order the additional $7500 Taylor sought for what she maintained were medical expenses not covered by insurance. The court concluded that Taylor had not submitted sufficient documentation of those expenses or their connection to the accident.

¶ 8.  On July 3, 2001, Kustelski filed the action underlying this appeal. His complaint alleged that

---

[3] WISCONSIN STAT. § 941.20 provides, in relevant part: "**Endangering safety by use of dangerous weapon. (1)** Whoever does any of the following is guilty of a Class A misdemeanor: (a) Endangers another's safety by the negligent operation or handling of a dangerous weapon[.]"

Accepting Kustelski's plea, Judge Donald confirmed the parties' understanding that the "dangerous weapon" in this case was Kustelski's car. Justifying the amended charge, the prosecutor explained, in part:

> [T]he [amended] charge ... accurately reflects the incident involved here. [The criminal complaint, preliminary hearing, and Taylor's letter to the court] all show ... extraordinarily dangerous operation of a motor vehicle, which it could be argued shouldn't be used on the streets because it appears to be primarily a vehicle used for racing .... The cause of this was how that vehicle was operated, and Mr. Kustelski ... had the choice as to how to operate his vehicle. He was operating it well in excess of any speed limit in the State of Wisconsin, much less the speed limit in the area of 46th and Good Hope.

Taylor's negligent driving caused him various damages and, further, that Taylor had committed abuse of process. Specifically, the abuse-of-process claim asserted:

> [Taylor] tortiously made allegations and assertions of criminal conduct by Mr. Kustelski ... to the Brown Deer Police, Milwaukee [County] District Attorney's Office and the Wisconsin Department of Transportation so as to persuade them to prosecute Mr. Kustelski criminally and/or suspend his license. That such use of the process was an abuse of the process to accomplish a purpose for which it was not designed, namely, collection of money damages for which she was not entitled. The abuse of process, upon information and belief, was used to coerce, harass and antagonize the Plaintiff.

¶ 9. The circuit court issued a scheduling order requiring that all dispositional motions be filed on or before May 31, 2002. On May 30, Taylor filed her motion for partial summary judgment. Not until June 3, however, did she provide mail service to Kustelski, who did not receive Taylor's motion until June 5. Nevertheless, the court considered her motion.

¶ 10. Seeking *partial* summary judgment, Taylor targeted the abuse-of-process claim. She did not seek summary judgment on Kustelski's negligence claim, apparently recognizing that the submissions established material factual issues. Judge Dominic S. Amato, however, after granting summary judgment on the abuse-of-process claim, adjourned the case for a status conference to allow himself time to review transcripts from the criminal case. He advised the parties: "I note for the record that the defendants have not moved for summary judgment on the negligence .... But as to whether your negligence action is going, the Court sua sponte is going to make a quick determination of that

948

based upon the transcripts before Judge Donald on the guilty plea and on sentencing."

¶ 11. Two weeks later, at the status conference, Judge Amato dismissed the negligence claim. Referring to Kustelski's plea in the criminal case, he stated "that admission even of a no contest can be used against him in a civil case once there is a finding of guilt." Judge Amato further explained: "[E]ven if I assume that Miss Taylor was somewhat negligent . . . that Miss Taylor changed lanes, the reality of the situation is [that] *based upon the plea, no reasonable jury under any of the facts could come back and find that Miss Taylor was more causally negligent than Mr. Kustelski.*" (Emphasis added.)

## II. DISCUSSION

¶ 12. We review an order granting summary judgment *de novo* using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). Any doubt as to the existence of a genuine issue of material fact should be resolved against the party seeking summary judgment. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980).

### A. Scheduling Deadline

¶ 13. Kustelski argues that the court should not have considered Taylor's motion for partial summary

judgment because it was served a few days after the deadline set in the scheduling order. We disagree.

¶ 14. The circuit court issued a scheduling order, pursuant to Milwaukee County Circuit Court Rule 364, which provides for the filing and service of all dispositive motions prior to the deadline set in the scheduling order. Here, it is undisputed that although the motion for partial summary judgment was filed with the court on time, it was not served on Kustelski until after the deadline. Taylor explains that a service snafu stemmed from the relocation of her insurer's law firm; as a result, the firm closed its offices on May 30, 2002, and did not resume regular business operations until June 3. Deciding to entertain Taylor's motion despite its tardy service, Judge Amato did not specifically refer to the law-firm factor or any other. Instead, he simply responded to Kustelski's objection by stating: "I don't make decisions on defects. [Circuit Court Judge William E.] Haese used to, God bless him. Next argument. Unless it's prejudicial. It's not prejudicial."

■■■■

¶ 15. A circuit court has discretion to determine whether and to what extent it will enforce the deadlines of its own scheduling orders. *See Kotecki & Radtke, S.C. v. Johnson*, 192 Wis. 2d 429, 447, 531 N.W.2d 606 (Ct. App. 1995). As we noted in *Kotecki & Radtke*:

> The application of local rules to the particularities of individual cases is better left to the wide discretion of the trial court in controlling the disposition of the cases before them. For this court to mandate that the trial court unblinkingly disregard all untimely filed pleadings and affidavits would be counter-productive to the orderly judicial disposition of the cases brought before the trial court.

*Id.*, 192 Wis. 2d at 447. Milwaukee County Circuit

Court Rule 367 allows for discretion. It provides: Any motion, brief, affidavit, or other supporting documents served and/or filed in an untimely fashion *may* be disregarded by the court and a decision may be based on the record as timely filed. (Emphasis added.) Generally, may is construed as permissive or allowing discretion. *See Rotfeld v. DNR*, 147 Wis. 2d 720, 726, 434 N.W.2d 617 (Ct. App. 1988). Accordingly, we review a trial courts decision to consider an untimely pleading under the local rules under the erroneous-exercise-of-discretion standard. *Kotecki Radtke*, 192 Wis. 2d at 448.

¶ 16. To properly exercise discretion, the trial court must act consistent with the facts of record and established legal principles. *Lievrouw v. Roth*, 157 Wis. 2d 332, 358–59, 459 N.W.2d 850 (Ct. App. 1990). More-over, where a court fails to articulate the basis for a discretionary decision, this court may independently review the record to determine whether a proper basis exists. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983). Here, the record allows this court to conclude that the circuit court properly exercised dis-cretion in entertaining the motion. The motion was filed timely; the tardiness of service was only a few days; and Taylor offered a reasonable explanation for the service delay.

## B. Negligence

¶ 17. Kustelski argues that the court erred, as a matter of law, in dismissing his negligence claim on the basis of his no contest plea in the criminal case. He contends that material factual issues remain for trial. We agree.

¶ 18. Wisconsin Stat. § 904.10 provides, in relevant part, that "a plea of no contest" and "statements made in court . . . in connection with" such a plea are "not admissible." The statute is clear and unambiguous. *State v. Mason*, 132 Wis. 2d 427, 432, 393 N.W.2d 102 (Ct. App. 1986). A no contest plea in a criminal case "cannot be used collaterally as an admission in future civil litigation[.]" *Robinson v. City of West Allis*, 2000 WI 126, ¶ 46, 239 Wis. 2d 595, 619 N.W.2d 692.

¶ 19. At oral argument before this court, counsel for Taylor confirmed his recognition that material factual issues remain on Kustelski's negligence claim, and candidly conceded the controlling effect of Wis. Stat. § 904.10. Thus, before the circuit court, Taylor never sought dismissal of the negligence claim. Nevertheless, the circuit court, *sua sponte,* ordered summary judgment and dismissed that claim based on its understanding that "even a no contest can be used against him in a civil case once there is a finding of guilt," and that "based upon the plea, no reasonable jury under any of the facts could come back and find that Miss Taylor was more causally negligent than Mr. Kustelski." Clearly, the court was mistaken. Under § 904.10, the plea from the criminal case would not be admissible in the civil trial and, therefore, a jury in the civil case could come to no conclusion "based upon the plea."

¶ 20. Still, on appeal, Taylor offers a fleeting argument that we could conclude, as a matter of law, that Kustelski was at least 51% negligent and, therefore, the summary judgment should be upheld on that basis. The summary judgment submissions, however, preclude such a conclusion as a matter of law. They include factual allegations of Taylor's conduct and driving, supported by witnesses and an accident reconstruction-

ist, that would require a jury's evaluation. *See Dottai v. Altenbach*, 19 Wis. 2d 373, 375, 120 N.W.2d 41 (1963) ("It is a rare case when summary judgment can be granted in an action grounded on negligence."); *see also Bishop v. Johnson*, 36 Wis. 2d 64, 68, 152 N.W.2d 887 (1967) ("In the great majority of cases the evidence is such that a jury question on the comparison of the causal negligence is presented."). Material factual issues, including the speeds of the vehicles and Taylor's alleged lane change and possible consumption of alcohol, remain. Thus, we must reverse the summary judgment on the negligence claim.

## C. Abuse of Process

¶ 21. Kustelski argues that the court erred in dismissing his claim for abuse of process. He contends that factual issues remain. Specifically, he asserts that Taylor: (1) "sought to shift the focus away from her own potential culpability"; (2) "used the criminal proceedings as a weapon not to seek restitution, but rather retribution"; (3) "used the criminal proceedings as a weapon against [him] to seek compensation for damages which her own insurance company denied as unverifiable and unsubstantiated"; (4) "attempted to use the process to coerce [him] to pay her $32,000 in unsubstantiated damages"; and (5) "attempted to influence the issuance of charges against [him] by asserting her position as a TV personality in order to gain the attention of the District Attorney's office."

¶ 22. Elaborating on these assertions in his reply brief, Kustelski contends that Taylor "had a unique and personal relationship with the Brown Deer Police Department." Kustelski points to affidavits of witnesses who indicated that Taylor appeared to have "an unusual amount of control over the police investigation" and, he

says, while he was required to perform field sobriety tests at the scene, Taylor, despite "reek[ing] of alcohol," was neither required to do so nor required to take a blood test at the hospital after the accident. Kustelski also asserts that the criminal charges against him were delayed and then, without notice to him, finally issued. He contends that "[m]aterial issues of fact are present regarding the ulterior motive and unfair advantage which Ms. Taylor sought to gain over [him] by actively participating in [his] prosecution."

¶ 23. Taylor responds that Kustelski's submissions satisfied neither element of abuse of process. She maintains that: (1) to the extent she "used" the criminal proceedings, she did so for a proper purpose; and (2) even if her purpose were deemed improper, she did not misuse the legal process. Taylor is correct.

¶ 24. In Wisconsin, abuse of process is committed by "[o]ne who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed." *Thompson v. Beecham*, 72 Wis. 2d 356, 362, 241 N.W.2d 163 (1976) (citation omitted). The elements of abuse of process are: (1) "a purpose other than that which the process was designed to accomplish"; and (2) "a subsequent misuse of the process, even though the process was properly instituted." *Id.* Explaining the elements, the supreme court has offered further guidance:

> "The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, *a willful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by*

954

*the process,* or aimed at an objective not legitimate in the use of the process, *is required;* and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collater[]al advantage, not properly involved in the proceeding itself, . . . The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive . . . ."

*Id.* at 362–63 (citations omitted) (emphases added). We conclude that the summary judgment submissions failed to establish either element.

¶ 25. The submissions did not establish that Taylor pursued any "purpose other than that which [the criminal justice] process was designed to accomplish." They showed no "misuse of the process." While allowing for suspicion or speculation, the submissions provided no evidence that Taylor employed any "willful act," or any "definite act or threat," that was "not proper in the regular conduct of the proceeding." *See id.*

¶ 26. Taylor's letters to District Attorney McCann and Judge Donald expressed her strong feelings and sought, in Kustelski's words, "retribution" and "restitution." But such expressions are not improper. Retribution is defined, in part, as "[p]unishment imposed as repayment or revenge for the offense committed; . . . [s]omething justly deserved," BLACK'S LAW DICTIONARY 1318 (7th ed. 1999)—purposes wholly consistent with the legitimate aims of the justice system. And, for sentencing, the victim's input on restitution is required. *See* WIS. STAT. § 973.20(13).

¶ 27.   Kustelski's appellate effort to resurrect his abuse-of-process claim is based, in part, on his hyperbolic and inaccurate accounts of Taylor's actions.[4] He maintains that Taylor attempted to "influence[] the issuance of charges . . . by asserting her position as a TV personality" and "coerce[ him] to pay her $32,000 in unsubstantiated damages." Nothing in the record, however, establishes that Taylor did anything improper.

¶ 28.   In her deposition, Taylor acknowledged her familiarity, as a result of her work, with the Brown Deer Police Department and some of its personnel.[5] She acknowledged her effort to impress upon the District

[4] Among other inaccuracies, Kustelski contends: "Ms. Taylor actively participated in the criminal prosecution of Mr. Kustelski. Most notably are a series of letters which she sent to the Milwaukee District Attorney['s] office." Kustelski then refers to the July 12, 1998 letter to District Attorney McCann and the October 16, 2000 letter to Judge Donald. He offers absolutely nothing to establish any "active participation" in the prosecution, or any letter to the District Attorney's Office, other than the initial one.

Additionally, while Kustelski repeatedly insists that Taylor sought at least $32,000 in restitution through the criminal court proceeding, the record refutes his claim. Taylor, at the District Attorney's request, presented an itemized list of her costs. She specifically distinguished the losses covered by insurance from the balance. During the restitution hearing, at which the prosecutor presented Taylor's information but at which Taylor did not even appear, neither Taylor nor the prosecutor ever sought more than $8230. Taylor did nothing to "coerce" payment of $32,000.

[5] While Kustelski contends that Taylor had a "unique relationship with the Brown Deer Police Department" and implies that, as a result, she was able to gain special treatment in this case, the deposition on which he relies provides little if any support. Taylor acknowledged that she knew departmental personnel but she added: "Let me clarify. I did not know

Attorney's Office her strong feelings about the case. She acknowledged her later efforts to stay in touch with the probation department to monitor restitution. Absolutely nothing in the record, however, counters what she said in her deposition testimony: "I let the legal process do its thing."

¶ 29. Taylor's public prominence did not disqualify her from noting her employment position in her letter to District Attorney McCann. Whatever her celebrity status, she could properly express her feelings about what, as a victim, she considered just. As counsel for Taylor emphasized at oral argument, any other conclusion would violate public policy by discouraging

anybody personally. As a TV news reporter, I had done interviews with the chief and also I believe . . . probably a lieutenant . . . ."

The balance of Kustelski's contention is, for the most part, grounded in the affidavits of two witnesses at the accident scene. They maintain, among other things, that the police "appeared to be consulting with Ms. Taylor throughout the accident investigation" in a "one-sided" manner, that the police treated Taylor "more favorably" than they treated Kustelski, that Taylor "appeared" to be "controlling the accident investigation," that the police required only Kustelski to perform field sobriety tests, and that the police "did not want to take statements from anyone who gave them information that was contrary to Ms. Taylor's version of the accident."

Even assuming the truth of these assertions, and even assuming that the police performed their duties based, in part, on their familiarity with Taylor, no abuse of process is established. Victims and witnesses are free to offer information to police who, in turn, have discretion to determine the direction of investigation. At most, therefore, the affidavits allege improper conduct by police, not Taylor.

victims and witnesses from communicating with law enforcement officials, for fear of being targeted in abuse-of-process actions.

¶ 30. At most, Kustelski has offered various allegations that could lead to *speculation* that *police or prosecutors* may have modified their approaches in consideration of Taylor's status. He has not, however, submitted anything to establish anything improper in *Taylor's* conduct that could counter her sworn statement that she "let the legal process do its thing."

¶ 31. Accordingly, the circuit court correctly granted summary judgment on the abuse-of-process claim. Therefore, we affirm the summary judgment on the abuse of process claim, reverse the summary judgment on the negligence claim and remand for further proceedings.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.