**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 16, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1585**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016FA341

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

KELLY A. WINK,

   PETITIONER-APPELLANT,

 V.

CRAIG S. WINK,

   RESPONDENT-RESPONDENT.

        APPEAL from a judgment of the circuit court for Fond du Lac County: ROBERT J. WIRTZ, Judge. *Affirmed*.

        Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Kelly Wink appeals from a judgment of divorce from Craig Wink.  On appeal, Kelly challenges the property division, a contempt finding against her for failing to meet the expenses of living in the marital home and an assessment of those expenses against her share of the property division, and the denial of her request for a contribution to her attorney's fees.  We conclude that the circuit court properly exercised its discretion in all respects.  We affirm.

Property Division

¶2      Kelly argues that the circuit court misused its discretion when it divided the parties' property because the court did not acknowledge the presumption of an equal division of property.  Property division is discretionary with the circuit court, and we review for a misuse of that discretion.  *Steinmann v. Steinmann*, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145.

¶3      While an equal division of property and debts acquired by the spouses before or during the marriage is presumed, a circuit court may, in the exercise of its discretion, consider and weigh other relevant factors that may yield an unequal division of property under the circumstances.  *Id.*, ¶25; *Derr v. Derr*, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170 (debts are divisible upon divorce).

¶4      The circuit court awarded $552,672 to Craig and $219,424 to Kelly as property division.  After holding Kelly responsible for $14,224 in marital home expenses imposed as a result of the circuit court's contempt finding, the court ordered an equalization payment from Craig to Kelly of $155,200.

¶5      In dividing the parties' property and debt, the circuit court employed the following framework.  The court deemed all property marital, except if such

property was acquired by gift or inheritance. With regard to the marital property, the court considered (1) whether the asset or debt was owned or owed by a party prior to marriage and (2) whether the asset or debt had a marital component as a result of the application of marital income or effort during the marriage. The court noted that the parties' thirteen-year marriage was Kelly's second marriage and Craig's third marriage. The record contained evidence that during the marriage, the parties kept their financial affairs separate and managed and controlled their own finances without keeping the other spouse apprised.

¶6 Throughout its property division decision, the circuit court considered which party brought the property to the marriage, the source of funds used to acquire the property or devoted to the property during the marriage, and whether those funds pre-dated the marriage. Using these factors, the court divided each asset accordingly. As an example of this framework, we cite the court's approach to the marital home on North Country Lane: the court found the value of the home ($456,300) and found that the purchase was partially funded by the sale of a home on Dogwood Lane owned by Craig before the marriage ($86,852 in proceeds applied). The court valued the divisible marital property component of the marital home at just shy of $369,448. The court performed the same analysis on other property, including Craig's chiropractic business, and various debts.[1] With the exception of the court's treatment of Kelly's outstanding student loans, as discussed below, Kelly does not dispute the court's specific approach to any

---

[1] Having made findings that the parties' maintained separate financial lives, the circuit court also found that Kelly did not contribute toward Craig's chiropractic business, and she did not pay her student loans during the marriage.

individual debt or item of property. Rather, she and we focus on the court's overall framework for the property division.

¶7 As stated, a circuit court has discretion to consider numerous factors in formulating a property division. WIS. STAT. § 767.61(3). Among those factors are the length of the marriage, the contribution of each party to the marriage, the property brought to the marriage by the parties, and any other factors deemed relevant under the circumstances. Sec. 767.61(3)(a), (b), (d), (m). A factor relevant under the circumstances may include how the parties conducted their financial lives during the marriage. *See Schmitt v. Schmitt*, 2001 WI App 78, ¶18, 242 Wis. 2d 565, 626 N.W.2d 14. These are the factors upon which the court in this case placed the greatest weight. *LeMere v. LeMere*, 2003 WI 67, ¶25, 262 Wis. 2d 426, 663 N.W.2d 789 (a circuit court may give the factors different and unequal weight).

¶8 Given the evidence in the record that the parties maintained separate financial lives during the marriage[2] and that Craig brought property to the marriage, the circuit court did not misuse its discretion in considering these factors and using them as a framework for dividing the parties' property and debt. "[D]ivorce actions are equitable in nature." *Seng Xiong v. Vang*, 2017 WI App 73, ¶39, 378 Wis. 2d 636, 904 N.W.2d 814. Under the facts of this case, we affirm the court's property division framework as equitable.

---

[2] Craig testified that Kelly's income was generally not used to support the household. Rather, Kelly used her income for her personal expenses and the expenses of her children from a prior relationship. The record also contains evidence that on more than one occasion, Craig assisted Kelly in paying off credit card and other debt she accumulated.

¶9      Kelly specifically challenges the circuit court's decision to make her solely responsible for the $140,000 in student loan debt she incurred almost entirely prior to the marriage.[3]  The court expressed disbelief that no payments were made on this debt even though there were resources to make such payments during the marriage.  Although Kelly conceded that she currently owed all of her student loan debt, she testified about a scenario under which she would owe less due to a debt forgiveness program.  The court found that scenario speculative because Kelly had not done anything to avail herself of the debt forgiveness program.  The court considered appropriate relevant evidence when it decided to allocate all of Kelly's student loan debt to her.  We see no misuse of discretion.

Contempt

¶10    At the commencement of the divorce, Kelly asked for certain temporary orders relating to the parties' living expenses and arrangements.  Kelly desired to remain in the marital home.  The circuit court recognized that the parties' income was not sufficient to meet the expenses of two households and cautioned the parties to consider the economic consequences of separate households.  The court considered the benefit to the parties' minor child of being able to reside in the home.  The court deemed the marriage of medium length and considered that each party could choose where to live during the pendency of the divorce.  However, the court warned that a party's choice would come with the financial consequences of that choice.  The court ordered that if Kelly was going

---

[3] As a result of accumulating interest and a failure to make any payments against the students loans, the date-of-divorce balance on Kelly's student loan debt was approximately $250,000.  Kelly testified that she incurred one-semester's student loan after the marriage.  The circuit court stated that it did not find this particular testimony compelling as it considered how to allocate Kelly's student loan debt.

to remain in the home, she had to bear the costs of living there (mortgage, taxes, and insurance costs).[4] The court stated that if Kelly determined that she could not remain in the marital home under the terms set by the court, she could move out and give Craig the option of moving into the home.

¶11 When Kelly failed to pay the expenses of living in the marital home, Craig sought a contempt ruling and an order requiring Kelly to vacate the home. Craig stated that he made various payments, including mortgage payments, to avoid a default. At a hearing on Craig's motion, the circuit court found that Kelly had not paid $14,224 in expenses incurred while she was living in the home. Kelly argued that she did not have the financial ability to pay these expenses, and the court knew at the time it required her to pay these expenses that she could not afford to do so. The court reiterated its view, expressed at the time it entered the order requiring Kelly to pay the expenses of living in the marital home, that two cannot live as cheaply as one, and if Kelly wanted to live in the home, she had to bear the expenses of doing so. The court further observed that it "took longer than necessary" for Kelly to move out of the home for financial reasons. Kelly conceded that if the court was going to enforce the requirement that she pay expenses, then it would be appropriate to offset the expenses against her share of the property division. The court imposed no other consequence upon Kelly other than requiring her to pay the expenses she incurred: $14,224.

¶12 On appeal, Kelly does not dispute that she failed to pay the expenses associated with living in the home as required by the circuit court. However, she

---

[4] The circuit court also entered orders requiring Craig to pay Kelly $1800 per month as child support and $500 per month as spousal support.

6

argues that the court did not make the findings necessary for contempt. We are not required to address an appellate argument in the manner which a party has framed the issue. *See* ***State v. Waste Mgmt. of Wis., Inc.***, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978). Because the court imposed no other consequence upon Kelly other than requiring her to pay the expenses assigned to her as an offset against her share of the property division, we do not address any of Kelly's arguments regarding alleged defects in the contempt procedure. Rather, we consider whether the court's decision to enforce its order that Kelly pay the home-related expenses was a proper exercise of discretion. *Cf.* ***Kustelski v. Taylor***, 2003 WI App 194, ¶15, 266 Wis. 2d 940, 669 N.W.2d 780 (enforcing scheduling orders is discretionary with the circuit court). We conclude that it was.

¶13    Kelly argues that the circuit court's order assigning the home's expenses to the party living there was unreasonable in light of the cost of living in the home, Kelly's resources, and the amount of monthly support Craig was ordered to pay, all of which left Kelly short of funds to meet home-related expenses. Kelly argues that she was placed in a financially impossible situation for which she should not have been sanctioned. We disagree. Kelly wanted to live in the marital home, and the court granted that request but imposed upon her the cost of living in the home, noting that if she decided she could not afford to live in the home, she could give Craig the opportunity to do so. The court properly enforced its order when it held Kelly responsible for the expenses she agreed to take on by living in the home. We see no misuse of discretion.

### Attorney's Fees

¶14    The circuit court denied Kelly's request that Craig contribute to her attorney's fees because neither party engaged in overtrial or pursued frivolous

7

issues or claims. Kelly argues that the court did not expressly consider her need for a contribution, Craig's ability to make a contribution, and the reasonableness of the fees requested. *See Holbrook v. Holbrook*, 103 Wis. 2d 327, 343, 309 N.W.2d 343 (Ct. App. 1981). Craig concedes that the court did not make findings on these points, but he argues that the court nevertheless properly exercised its discretion in denying Kelly's request that Craig contribute to her attorney's fees. *See Johnson v. Johnson*, 199 Wis. 2d 367, 377, 545 N.W.2d 239 (Ct. App. 1996). "Although the proper exercise of discretion contemplates that a court explain its reasoning, … we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶15 As evidence of her need for a contribution to her attorney's fees, Kelly cites the debt assigned to her, including her student loan debt. The decision to deny Kelly's request for a contribution to her attorney's fees must be understood in the context of the circuit court's finding that the parties maintained separate financial lives and the reasons the court assigned Kelly her student loan debt. When considered in the context of the record, including Kelly's handling of her student loan obligation, the largest share of the debt she was assigned,[5] the court did not err when it failed to expressly consider that this debt might impact Kelly's ability to pay her attorney's fees. We will not disturb a discretionary decision unless the circuit court exercised its discretion with no reasonable basis. *Andrew J.N. v. Wendy L.D.*, 174 Wis. 2d 745, 766, 498 N.W.2d 235 (1993). The record

---

[5] Kelly was to receive an equalization payment of $155,200. In addition to her student loan debt, Kelly was also assigned debt of approximately $13,000. She requested a $20,000 contribution to her approximately $40,000 in attorney's fees.

8

shows a reasonable basis for denying Kelly's request for a contribution to her attorney's fees.

　　　　*By the Court*.—Judgment affirmed.

　　　　This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.