Jeannie HEFTY d/b/a Heft-Kat Farm,
Plaintiff-Appellant,

v.

Daniel R. STRICKHOUSER,
Defendant-Respondent-Petitioner,

ABC INSURANCE COMPANY and
ADM Alliance Nutrition Inc., Defendants.

Supreme Court

*Nos. 2006AP1094 and 2006AP1956.*
*Oral argument January 15, 2008.—Decided July 15, 2008.*

2008 WI 96

(Also reported in 752 N.W.2d 820.)

For the defendant-respondent-petitioner there were briefs by *Paul E. Benson, Joseph Louis Olson,* and *Michael Best & Friedrich LLP,* Milwaukee, and oral argument by *Paul E. Benson* and *Joseph Louis Olson.*

For the plaintiff-appellant there was a brief by *Ward Richter, Sheila M. Sullivan,* and *Bell, Gierhart & Moore, S.C.,* Madison, and oral argument by *Sheila M. Sullivan.*

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished opinion and order of the court of appeals,[1] which summarily reversed the Walworth County Circuit Court, Michael S. Gibbs, Judge.

¶ 2. The case requires us to review two discretionary decisions of the circuit court. Both decisions involve the circuit court's scheduling order, which incorporated by attachment a filing deadline for a summary judgment response that departed from the deadline in Wis. Stat. § 802.08(2).[2] Judge Gibbs issued a scheduling order that had a then-existing Walworth County local circuit court rule appended to it. The rule required that a response to a summary judgment motion be filed and served within 20 days of service of the motion. Defendants ADM Alliance Nutrition, Inc. (Alliance) and

---

[1] *Hefty v. Strickhouser,* Nos. 2006AP1094 & 2006AP1956, unpublished order (Wis. Ct. App. May 23, 2007).

[2] Wisconsin Stat. § 802.08(2) reads: "Motion. *Unless earlier times are specified in the scheduling order,* the motion shall be served at least 20 days before the time fixed for the hearing and the adverse party shall serve opposing affidavits, if any, at least 5 days before the time fixed for the hearing." (Emphasis added.)

All references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

Daniel Strickhouser[3] filed a motion for summary judgment in accord with the court's scheduling order, but plaintiff Jeannie Hefty (Hefty) filed and served her response to the motion after the deadline. As a result, the court struck her response, dismissed her complaint with prejudice, and granted summary judgment to Strickhouser as a sanction for noncompliance. Hefty appealed.

¶ 3. The court of appeals reversed, concluding that the circuit court did not properly exercise its discretion when it failed to demonstrate on the record why deviation from the deadline of Wis. Stat. § 802.08(2) was necessary and appropriate, as required by the court of appeals' recent decision in *Hunter v. AES Consultants, Ltd.*, 2007 WI App 42, ¶ 15, 300 Wis. 2d 213, 730 N.W.2d 184 (holding that "with regard to scheduling orders, trial courts that deviate from the statutory time requirements for responding to a motion for summary judgment should explain on the record why that deviation is necessary and appropriate").

¶ 4. We are asked to determine whether the circuit court properly exercised its discretion when it: (1) issued a scheduling order with deadlines different from Wis. Stat. § 802.08(2) without expressly indicating its reasoning on the record; and (2) sanctioned Hefty for failing to comply with the scheduling order by striking her response, which ultimately resulted in the dismissal of her suit with prejudice and summary judgment to Strickhouser.

¶ 5. We affirm the decision of the court of appeals, but on different grounds. The circuit court was not

---

[3] Defendants Alliance and Daniel Strickhouser will be referred to collectively as "Strickhouser." Daniel Strickhouser will be referred to individually as "Daniel Strickhouser" or "Mr. Strickhouser."

required to demonstrate on the record why its scheduling order deviated from § 802.08(2) to properly exercise its scheduling discretion under Wis. Stat. § 802.10. However, the circuit court erroneously exercised its discretion by entering a scheduling order that incorporated a void local rule and by striking Hefty's response as a sanction for untimely filing, which ultimately resulted in dismissal of her complaint with prejudice and summary judgment to Strickhouser. Accordingly, we affirm and remand.

## I. BACKGROUND

¶ 6. The facts giving rise to the underlying civil suit have little to do with the issues before us. Nonetheless, they provide context and reveal the stakes involved in this procedural dispute.

¶ 7. Hefty owns a dairy farm in Elkhorn. In 2000 she entered into a contract with defendant Alliance through its disclosed agent, Daniel Strickhouser, who was to provide services to Hefty as a dairy cow nutritionist. Hefty engaged Mr. Strickhouser in this capacity for approximately two years. His advice regarding the management and control of feed and silage initially resulted in a large increase in milk production for Hefty's herd. In November 2002, however, milk production fell, allegedly due to Mr. Strickhouser's rationing of food and other nutrients. Hefty was forced to stop milking some of her herd to allow it to regain the strength and health necessary to maintain consistent milk production. Because of this decreased milking, Hefty allegedly suffered financial losses.

¶ 8. On February 3, 2004, Hefty sued Mr. Strickhouser and Archer-Daniels-Midland Company (ADM), Alliance's parent company, asserting a cause of action

for negligence in providing dairy nutritionist services. On July 14, 2005, Hefty amended the complaint to assert causes of action for negligence, negligent misrepresentation, strict responsibility misrepresentation, intentional deceit misrepresentation, and breach of contract against Daniel Strickhouser, ADM, and Alliance. The circuit court dismissed all causes of action against ADM and dismissed Hefty's breach of contract claim against Mr. Strickhouser. Alliance remained a defendant to all five causes of action in the amended complaint.

¶ 9. On July 19, 2005, Walworth County Circuit Judge James L. Carlson sent counsel for the parties an order for scheduling information under Wis. Stat. § 802.10(3).[4] The order included a scheduling questionnaire that was to be completed by the parties and returned to the clerk of courts, who would then send copies to all the parties. The order stated that "answers [to the questionnaire] will be referred to by the court in the setting of the time and date requirements mentioned in Wis. [Stat. §] 802.10(3)(a)." The questionnaire included the question: "Do you intend to file a motion

---

[4] Wisconsin Stat. § 802.10(3), which deals with calendar practice, provides in pertinent part:

> Scheduling and planning. Except in categories of actions and special proceedings exempted under sub. (1), the circuit court may enter a scheduling order on the court's own motion or on the motion of a party. The order shall be entered after the court consults with the attorneys for the parties and any unrepresented party. The scheduling order may address any of the following:
>
> . . . .
>
> (c) The time to file motions.
>
> . . . .
>
> (h) The appropriateness and timing of summary judgment adjudication under s. 802.08.

for judgment on the pleading under Wis. Stats. 802.03 or for summary judgment under Wis. Stats. 802.08? Yes No If yes, specify: _____".

¶ 10. Counsel for Strickhouser indicated on the completed form that he intended to file a motion for summary judgment by circling "Yes" and specifying "[m]otion for summary judgment" in the blank space.

¶ 11. On August 3, 2005, Judge Gibbs entered a scheduling order, which was forwarded to counsel for the parties. The order[5] included several deadlines related to the case, including one for filing a motion for summary judgment. The order indicated that a "[m]otion for judgment on pleadings/summary judgment must be filed by *02/01/2006.*" Below this language, the following appears: "*(SEE ATTACHED SHEET FOR MOTION PROC[E]DURE)*". The sheet attached to the scheduling order was part of then-existing Walworth County local circuit court rules. The attached rule was entitled "Standard Summary Judgment Procedure." The fourth of seven points in the rule read:

> 4. Upon service of the motion for summary judgment, within 20 days, any party opposing a pending motion shall serve and file:
>
> a. A response to the moving party's Proposed Undisputed Facts[,] and

---

[5] The scheduling order appears to be a template word-processed document that includes "blanks" that can be modified on a computer to tailor the template scheduling order to the procedural timing deadlines specified by the circuit court for a particular case. All deadlines appear as underlined text. Some blanks in Judge Gibbs' scheduling order, such as that for a motion for default judgment, were filled in with "*n/a*" to indicate that the deadline in question did not pertain to Hefty's case.

 b. A response to the moving party's Proposed Conclusions of Law, and

 c. A brief in opposition to the motion for summary judgment, and

 d. Any supporting papers, pursuant to sec. 802.08(3), Wis. Stats. that the party chooses to submit.

¶ 12. The scheduling order stated that "[f]ailure to abide by this scheduling order may result in sanctions being imposed—See [Wis. Stat. §§] 802.10(3)(d); 805.03; 802.10(7) and [Wis. Stat. ch.] 785."

¶ 13. The record reflects that the parties exchanged barbs early in this litigation. In a filing opposing Hefty's motion for leave to amend her first complaint, Strickhouser alleged that Hefty failed to provide the court or the defendants with a copy of the amended complaint. In August 2005 Hefty filed a motion for sanctions against Strickhouser for failure to comply with discovery requests under Wis. Stat. § 804.12. In September 2005 Strickhouser filed a response opposing this motion and alleging that Hefty was similarly delinquent in meeting discovery deadlines. As noted above, Strickhouser was successful in moving the court to dismiss portions of Hefty's amended complaint.

¶ 14. On February 1, 2006, Strickhouser filed a motion for summary judgment, which was served on Hefty via regular mail on February 6, 2006. The notice of motion provided to Hefty indicated that the motion would be heard by Judge Gibbs on March 13, 2006. Pursuant to the rule attached to Judge Gibbs' August 3, 2005, scheduling order, Hefty's response to the defendants' motion for summary judgment was due to be filed and served 20 days after service, namely, by March

1, 2006.[6] Hefty filed her response to Strickhouser's motion for summary judgment on March 6, 2006. She served it on Strickhouser via facsimile at 5:58 p.m. that day.

¶ 15. On March 9 Strickhouser filed a motion to strike Hefty's untimely summary judgment response papers.

¶ 16. On March 13 Judge Gibbs held a hearing regarding Strickhouser's motions to strike Hefty's response papers and for summary judgment. At the hearing, counsel for Hefty indicated that he "simply followed [Wis. Stat. § 802.08(2)]" when he determined that the date he filed and served the response was timely. Judge Gibbs then commented that the "scheduling order dated August 3, 2005, has attached to it and very specifically outlines standard summary judgment procedures" including that a "response to the motion for summary judgment must be filed within twenty days." Judge Gibbs also stated:

---

[6] By its reference to the local rule, the scheduling order required Hefty to file and serve her response to Strickhouser's motion for summary judgment within 20 days of receiving it on February 6, 2006. Ordinarily this deadline would have been February 27, taking into consideration that February 26 was a Sunday. However, Hefty was entitled to three additional days to file and serve her response to Strickhouser's motion under Wis. Stat. § 801.15(5)(a) because Strickhouser's motion was served by mail. Wisconsin Stat. § 801.15(5) provides in part:

> (5) Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party:

> (a) If the notice or paper is served by mail, 3 days shall be added to the prescribed period.

The parties appear to agree that Wis. Stat. § 801.15(5)(a) allowed Hefty until March 1 to file and serve her motion on Strickhouser.

We don't write [scheduling orders] for fun. We don't write these for our health. We write these to be followed. There's a slight trend that I've noticed lately. People don't follow scheduling orders and basically their arguments [are], well, nobody got hurt. Well, that's not the reason we do it. We do it for orderly administration of justice and this is clearly beyond the time of the—beyond the twenty days. It's thirty-eight days, roughly.[7] Well, with February in there, it's not quite so tight, but, ah, even still, I question whether it was five business days even, which is what the statute is going to require being scheduled for the 13th.

¶ 17. Judge Gibbs then orally struck Hefty's summary judgment response papers and granted summary judgment to Strickhouser. Judge Gibbs stated that "based on the failure to respond to [Strickhouser's motion], I will find that Defendants are entitled to summary judgment as a matter of law." In doing so, the circuit court refused to consider oral argument presented by counsel for Hefty addressing disputed issues of material fact with regard to her claims. The court's decision was preceded by the following colloquy between Hefty's counsel and Judge Gibbs:

COUNSEL: Your Honor, would you accept oral argument at this time in regards to [Strickhouser's] motion for summary judgment in light of the fact that you disregarded our paperwork? I mean, ah, because the statute does allow for oral argument on summary judgment motions.

---

[7] The circuit court's comment that Hefty took 38 days from the time she received the defendants' motion to file and serve her response was not correct. Hefty's response was filed 28 days after the motion was served, which was five days late.

THE COURT: Okay. So you want me to consider what? Everything that you would have submitted in writing? That's your response.

COUNSEL: I would certainly like a chance to make an argument regarding their motions in light of the fact that the Court isn't going to consider our paperwork.

THE COURT: Well, what does that do? That just gives you the right to basically read your paperwork into the record.

COUNSEL: I have no intention of reading my entire paperwork into the record, but, Your Honor, the statute does [] allow for oral argument and I would ask the Court for an opportunity to do that. . . .

¶ 18. Hefty's counsel proceeded to argue that genuine issues of material fact remained and that summary judgment was therefore inappropriate. Judge Gibbs responded: "I'm going to refer you to the local rules, paragraph 4, under Standard Summary Judgment Procedures, which is a special attachment." The court then read the local rule at issue, which had been appended to the scheduling order, and concluded by saying, "[f]ailure to comply with these rules has left me with no factual issue to consider. And I will grant summary judgment as requested finding there is no genuine issue of material fact that's been presented to me and that Defendants are entitled to judgment as a matter of law."

¶ 19. The court's March 13 oral ruling was formalized in a March 29 written order granting Strickhouser's motions to strike and for summary judgment, adopting Strickhouser's proposed findings of fact and conclusions of law, and dismissing Hefty's complaint with prejudice.

¶ 20. On March 21 Hefty filed three motions: (1) a motion for enlargement of time to file a response to Strickhouser's motion for summary judgment; (2) a motion for relief from Judge Gibbs' March 13 order granting summary judgment to Strickhouser; and (3) a motion for reconsideration. Hefty's counsel filed an affidavit in support of the first two motions, in which he stated that he was "aware that [the] Walworth County Circuit Court Rules for civil actions, in particular ¶ 2B Pretrial and Motion Proceedings, require a response to a motion in a civil case to be filed five days before the date of the motion hearing." His affidavit also stated:

> Although I had in my file a copy of the Court's scheduling order, which required motions for summary judgment to be filed by February 1, 2006, I failed to fully review the notice accompanying that scheduling order entitled "STANDARD SUMMARY JUDGMENT PROCEDURE." Thus, I did not realize that the Court's standard procedure required any opposition to the defendants' pending motion to be filed within 20 days.

¶ 21. On April 7 Judge Gibbs held a hearing to address Hefty's March 21 motions. At the hearing Judge Gibbs denied Hefty's three motions and reiterated that his scheduling order was "not put out for [his] health" and that it was issued "to insure the order of the operation of the Court." A written order was entered on April 17 denying Hefty's three March 21 motions.

¶ 22. On May 2 Hefty filed a notice of appeal, No. 2006AP1094, which appealed the circuit court's March 29 and April 17 orders.

¶ 23. On May 10 Judge Gibbs ordered judgment in favor of Strickhouser. On June 12 Hefty filed three additional motions, all related to the circuit court's May 10 judgment: (1) a motion for reconsideration; (2) a

motion for relief from judgment; and (3) a motion for enlargement of time to respond to Strickhouser's motion for summary judgment. On July 21 the circuit court denied Hefty's three June 12 motions.

¶ 24. On August 8 Hefty filed a second notice of appeal, No. 2006AP1956, to challenge the circuit court's May 10 and July 21 orders. The court of appeals consolidated the appeals on August 16, 2006.

¶ 25. On May 23, 2007, the court of appeals issued an unpublished opinion and order reversing summary judgment in favor of Strickhouser and remanding Hefty's case to the circuit court. The court of appeals relied upon its recent decision in *Hunter* to support its conclusion that the circuit court erred in imposing a scheduling order at variance with Wis. Stat. § 802.08 without a demonstrable exercise of discretion.

¶ 26. Strickhouser petitioned this court for review, which we granted on September 13, 2007.

## II. STANDARD OF REVIEW

¶ 27. This case involves the interpretation and application of statutes and local circuit court rules, which are questions of law we review de novo. *State v. Sorenson*, 2000 WI 43, ¶ 15, 234 Wis. 2d 648, 611 N.W.2d 240.

¶ 28. This case also involves a circuit court's discretionary decisions to control its docket through a scheduling order, and to impose sanctions for an untimely filing in response to that order. "A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a

545

conclusion that a reasonable judge could reach." *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991) (citing *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982)). "The decision to impose sanctions and the decision of which sanctions to impose . . . are within a circuit court's discretion." *Indus. Roofing Servs., Inc. v. Marquardt,* 2007 WI 19, ¶ 41, 299 Wis. 2d 81, 726 N.W.2d 898 (plurality opinion) (citation omitted); *see also Sentry Ins. v. Davis,* 2001 WI App 203, ¶ 19, 247 Wis. 2d 501, 634 N.W.2d 553.

### III. ANALYSIS

¶ 29. This case requires us to explore the limits of circuit court discretion to manage the court's calendar. It implicates scheduling orders, procedural statutes, local court rules, and sanctions for noncompliance. The critical importance of circuit court discretion is pitted against other compelling considerations.

¶ 30. Two discretionary decisions of the circuit court are at issue. The first is the circuit court's decision to enter a scheduling order that included summary judgment deadlines for filing and service. This decision is largely governed by Wis. Stat. §§ 802.10 and 802.08(2). The second is the circuit court's sanction for violating the terms of its scheduling order, namely, the striking of Hefty's late response, which ultimately led to dismissal of her suit with prejudice and the grant of summary judgment to the defendants. Sanctions for violation of a circuit court's scheduling order are provided by Wis. Stat. § 802.10(7).

A. Wisconsin Stat. § 802.10

¶ 31. Wisconsin circuit courts have discretion to control their dockets. This power is inherent to their

function.[8] It is also granted by statute. Wisconsin Stat. § 802.10 addresses "calendar practice" and provides that a circuit court "may enter a scheduling order on the court's own motion or on the motion of a party." Wis. Stat. § 802.10(3). "The order shall be entered after the court consults with the attorneys for the parties and any unrepresented party." *Id.* By its terms, the statute requires that the circuit court engage in some type of consultation before entering a scheduling order, although it does not define consultation or specify methodology. Once the court has satisfied the consultation requirement, its scheduling order may address, as pertinent here, both "[t]he time to file motions" and "[t]he appropriateness and timing of summary judgment adjudication under s. 802.08," Wis. Stat. § 802.10(3)(c), (3)(h).

¶ 32. Circuit courts engage in various types of consultation under Wis. Stat. § 802.10(3). The primary example is a scheduling conference,[9] which differs from

---

[8] "Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort." *Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 314, 127 N.W.2d 225 (1964) (citation omitted); *see also Lentz v. Young,* 195 Wis. 2d 457, 465, 536 N.W.2d 451 (Ct. App. 1995) ("The filing of motions is a matter that directly impacts the trial court's administration of its calendar. Trial courts have the inherent power to control their dockets to achieve economy of time and effort."); *Rupert v. Home Mut. Ins. Co.,* 138 Wis. 2d 1, 7, 405 N.W.2d 661 (Ct. App. 1987) ("We recognize the trial court's inherent discretionary power to control its docket with economy of time and effort." (citing *Latham,* 23 Wis. 2d at 314)).

[9] Wisconsin Stat. § 802.10 was created by supreme court order in 1975. *See* S. Ct. Order, 67 Wis. 2d 585, 634 (eff. Jan. 1, 1976). The statute has since been amended several times, and the scheduling conference procedure has persisted, although it

the pretrial conference outlined in § 802.10(5).[10] A pretrial conference allows the court to "consider any

is no longer explicitly part of Wis. Stat. § 802.10. Wisconsin Stat. § 802.10(3)(a) (1993–94) provided for a "scheduling conference" to address such matters as setting a date for the pretrial conference and trial, setting times for hearing on a motion for default judgment, completion of discovery, and service and hearing of motions at or prior to the pretrial conference. Reference to a "scheduling conference" was removed from § 802.10 in 1995. *See* S. Ct. Order 95–04, 191 Wis. 2d xxi-xxiv (eff. July 1, 1995).

Professor Charles Clausen and David Lowe explained the purposes behind the scheduling conference:

> [Scheduling conferences are] based on the practice of many federal district courts to call in the attorneys in an action shortly after commencement for a report on the status of the action and for the setting of dates. This scheduling conference is essentially a "pre-pretrial." The purpose of the scheduling conference is to get the litigation moving and keep it moving. In probably the most significant change from the current practice, the new rules—most especially section 802.10—place the responsibility for moving the case on the court, as well as on the attorneys.
>
> At the scheduling conference, the attorneys should be sufficiently familiar with the case to form a realistic opinion as to the amount of time necessary to complete discovery and to discover whether impleader of third parties will probably be necessary. The judge's decision on dates for pretrial conference and trial will necessarily be predicated on the time required for discovery and impleader.
>
> At the conference, the judge issues a scheduling order reciting the dates established. This order controls the course of the action and relief from it should not be granted lightly. One of the primary goals of the rules is to establish a system in which lawyers and litigants may confidently expect their cases to move along apace. The scheduling order is intended to provide the framework in which lawyers can realistically allocate time to the pretrial activities in each case.

Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure Chapters 801–803*, 59 Marq. L. Rev. 1, 68 (1976).

[10] *See Guelig v. Guelig*, 2005 WI App 212, ¶ 34, 287 Wis. 2d

matter that facilitates the just, speedy and inexpensive disposition of the action, including the matters under [Wis. Stat. § 802.10(3)]." Wis. Stat. § 802.10(5). The scheduling conference is essentially a "prepretrial" conference. *See* Judicial Council Committee's Note, 1974, § 802.10, Stats.

¶ 33. Scheduling conferences, although often informal and conducted off the record,[11] provide parties the occasion to impact the court's scheduling of their litigation. At the conference, parties can object to scheduling decisions that are viewed as inconvenient or unfair. Scheduling becomes a collaborative process.[12] In addition, the scheduling conference is likely to provide justification for future sanction if explicit, negotiated, and amicable deadlines are breached. An attorney who has knowledge of deadlines because of active participation in a scheduling conference will have little excuse for tardiness and cannot reasonably claim ignorance. A court's discretionary sanction for violation of a scheduling order is generally well grounded when a schedul-

472, 704 N.W.2d 916 (recognizing that " '[p]retrial conference' and 'scheduling conference' are legal terms of art that refer to different types of proceedings").

[11] A committee comment to the *Wisconsin Judicial Benchbook* notes that "[scheduling] [c]onference[s are] rarely held on [the] record unless [they are] highly complex matters." *Wisconsin Judicial Benchbook: Civil*, CV 4–4 (3d ed. 2007).

We note that the *Benchbook* is not intended to stand as independent legal authority for any proposition of law, and we cite it merely as an informed and insightful discussion of practice.

[12] "[Wisconsin Stat. § 802.10] places the responsibility for moving a case on the court as well as the attorneys." Judicial Council Committee's Note, 1974, § 802.10, Stats.

ing conference has taken place at which all interested parties were present to be heard.

██

¶ 34. A scheduling questionnaire is another form of circuit court consultation for devising scheduling deadlines. A questionnaire may be used in place of a live conference (whether in person, by telephone, or by other electronic means) for the sake of convenience. The questionnaire can be mailed, faxed, or e-mailed to parties and their attorneys and then returned to and filed with the court and forwarded to other parties.

¶ 35. A scheduling questionnaire was used here. An order for scheduling information[13] and a scheduling questionnaire were mailed to attorneys for the parties on July 19, 2005. The order for scheduling information was entered by Judge Carlson, not Judge Gibbs. The parties' attorneys completed the questionnaire, and it was filed in circuit court. Judge Gibbs then entered a scheduling order on August 3, 2005. The record is silent with regard to the judge's consideration of the completed questionnaires, but we infer that Judge Gibbs considered the questionnaires inasmuch as the scheduling order set a deadline of February 1, 2006, for a motion for summary judgment. Strickhouser's completed questionnaire had indicated that he intended to file a motion for summary judgment.

¶ 36. Hefty argues that the circuit court failed to properly "consult" with the parties before entering its scheduling order, as the scheduling questionnaire "can hardly be considered an adequate consultation as that

---

[13] The order referenced Wis. Stat. § 802.10(3)(c) in its caption. The order stated that "[f]ailure to comply with this Order will subject that party to sanctions provided by Wis. Stat[. §] 805.03."

process is contemplated in [Wis. Stat. § 802.10(3)]." Hefty asserts that the questionnaire used was "pre-printed" and "gave the parties no opportunity to address the [scheduling] issues in any depth."

█

¶ 37. We disagree. The scheduling questionnaire used by the circuit court was sufficient to satisfy Wis. Stat. § 802.10(3). The form was a convenient means to ascertain important scheduling information. Although the form consisted of a single sheet, it addressed many of the basic scheduling questions faced by a circuit court attempting to accommodate the potentially complex timing needs of several parties and their counsel. The form addressed such issues as joinder of parties, amendment of pleadings, the timing and length of a potential trial, the number of witnesses and expert witnesses expected to be called, the timing of discovery, the likelihood of motions for summary judgment and judgment on the pleadings, whether a jury trial is requested, and the option of alternative dispute resolution. Importantly, the form added: "[l]ist any other information pertinent to scheduling (for instance, times when you or key witnesses will not be available for trial due to vacations, etc.)" followed by three blank lines.

¶ 38. Hefty's counsel filled in these blank lines with numerous dates that were inconvenient because of other obligations. Hefty cannot now argue that the circuit court failed to properly consult with her in entering its scheduling order when: (1) the court ordered her to submit a scheduling questionnaire; (2) her counsel did so, even volunteering additional information to the court outside of the "standard" yes-or-no answers on the form; and (3) the court used the questionnaire to fashion its scheduling order. The form stated that "[t]he answers [to the questionnaire] will be

referred to by the court in the setting of the time and date requirements mentioned in Wis. [Stat. §] 802.10(3)(a)." We find no erroneous exercise of discretion in the circuit court employing a scheduling questionnaire to create its scheduling order. We perceive no attempt in the questionnaire to limit input from the parties.

B. Wisconsin Stat. § 802.08(2)

¶ 39. This brings us to the validity of the scheduling order. Judge Gibbs entered a scheduling order which attached a portion of the Walworth County Circuit Court Rules—Civil, relating to "Standard Summary Judgment Procedure." The attachment reads in part: "Upon service of the motion for summary judgment, within 20 days, any party opposing a pending motion shall serve and file: [responsive materials]."

¶ 40. Hefty's counsel admittedly did not adhere to the 20 day filing and service deadline in this local rule.[14] Hefty argues, however, that the circuit court erroneously exercised its discretion by entering a scheduling order that departed from the deadlines in Wis. Stat. § 802.08 without demonstrating reasons for the departure on the record. *See Hunter,* 300 Wis. 2d 213, ¶ 15 ("[T]rial courts that deviate from the statutory time requirements for responding to a motion for summary judgment should explain on the record why that deviation is necessary and appropriate.").

¶ 41. Wisconsin Stat. § 802.08(2) provides in pertinent part: "Motion. *Unless earlier times are specified*

---

[14] We note that Hefty's counsel complied with the summary judgment response service deadline that is generally applicable absent a contrary scheduling order. *See* Wis. Stat. §§ 801.15 and 802.08(2).

*in the scheduling order,* the [summary judgment] motion shall be served at least 20 days before the time fixed for the hearing and *the adverse party shall serve opposing affidavits, if any, at least 5 days before the time fixed for the hearing.*" (Emphasis added.)

¶ 42. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. By its plain language, Wis. Stat. § 802.08(2) establishes a rule that a response[15] to a motion for summary judgment is to be served at least five days before the hearing on the motion. *However,* a scheduling order may provide for an earlier deadline.

¶ 43. Wisconsin Stat. § 802.08 ("Summary judgment") was created by supreme court order, effective January 1, 1976. S. Ct. Order, 67 Wis. 2d 585, 630 (effective Jan. 1, 1976). It has since been amended several times. The "[u]nless earlier times are specified in the scheduling order" language was added in 1992 as part of an overhaul of the statute. *See* S. Ct. Order, 168 Wis. 2d xxi, xxi-xxiii (effective July 1, 1992).

¶ 44. Prior to 1992, Wis. Stat. § 802.08(2) read in part: "The [summary judgment] motion shall be served at least 20 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits." Wis. Stat. § 802.08(2) (1989–90).

---

[15] We note that the statute includes the phrase "opposing affidavits." Wis. Stat. § 802.08(2). These words have been construed to include all submissions made by an adverse party in response to a motion for summary judgment. *See David Christensen Trucking & Excavating, Inc. v. Mehdian,* 2006 WI App 254, ¶¶ 13–14, 297 Wis. 2d 765, 726 N.W.2d 689 (referring to Mehdian's "submissions," not merely his "opposing affidavits," in applying Wis. Stat. § 802.08(2)).

In practice, this rule proved to be unfair because the nonmovant could serve opposing affidavits the day before the hearing, giving the court and the movant minimal notice and opportunity to prepare. In response, "a plethora of local court rules resulted." Judicial Council Note, 1992, § 802.08, Stats. (citing *Cmty. Newspapers, Inc. v. West Allis,* 158 Wis. 2d 28, 461 N.W.2d 785 (Ct. App. 1990)). The problem was that these local rules created a serious lack of uniformity. To remedy the situation, this court acted by amending § 802.08 to its current form. The court made the change to "preclude such local rules and promote uniformity of practice." Judicial Council Note, 1992, § 802.08, Stats.[16]

¶ 45. Significantly, however, the court's 1992 amendment added the "[u]nless earlier times are specified in the scheduling order" provision to Wis. Stat. § 802.08. S. Ct. Order, 168 Wis. 2d xxi, xxii (effective July 1, 1992). Thus, the statute's plain language and the Judicial Council Note indicate that *scheduling orders* may trump Wis. Stat. § 802.08(2). Judicial Council Note, 1992, § 802.08, Stats. ("Courts may require earlier filing by scheduling orders, however.").

■

¶ 46. By contrast, local circuit court rules may not trump the deadlines in Wis. Stat. § 802.08(2). This principle is undisputed. *See, e.g., David Christensen Trucking & Excavating, Inc. v. Mehdian,* 2006 WI App 254, ¶ 13, 297 Wis. 2d 765, 726 N.W.2d 689 (holding that a Marathon County local circuit court rule could not trump the deadlines of Wis. Stat. § 802.08(2)); *Ricco v. Riva,* 2003 WI App 182, ¶¶ 25–26, 266 Wis. 2d 696,

---

[16] *See Phelps v. Physicians Ins. Co. of Wis., Inc.,* 2005 WI 85, ¶ 77, 282 Wis. 2d 69, 698 N.W.2d 643 (Prosser, J., concurring in part, dissenting in part).

669 N.W.2d 193 (holding that the filing of an opposing affidavit was timely under Wis. Stat. § 802.08(2), even though it did not satisfy a conflicting Waukesha County local circuit court rule).

¶ 47. The difference between cases like *David Christensen* and *Ricco* and this case is that in this case we evaluate a scheduling order that implicitly incorporates a deadline from a local court rule, not a local court rule standing alone. The question is whether this difference is significant enough to change the outcome.

¶ 48. Recognizing that a scheduling order's deadlines may supersede statutory deadlines, Hefty contends that the circuit court must explain on the record why its scheduling order deviates from Wis. Stat. § 802.08(2). She relies on *Hunter*, where the court of appeals stated:

> [W]e hold that, with regard to scheduling orders, trial courts that deviate from the statutory time requirements for responding to a motion for summary judgment should explain on the record why that deviation is necessary and appropriate. We appreciate that this places a burden on trial courts, but without this requirement courts could make an end-run around § 802.08(2) and continue to enforce local rules through their scheduling orders.

*Hunter*, 300 Wis. 2d 213, ¶ 15.

¶ 49. We note that the language quoted above includes the word "should." *Id*. One might attempt to focus on this word and rationalize that the court of appeals' holding in *Hunter* is merely aspirational. However, such an effort would be disingenuous. In the present case, the court of appeals said:

> In *Hunter*, we pointed out that Wis. Stat. § 802.08(2) grants courts the authority "to adjust the

555

time requirements for filing responsive materials *to suit the particulars of each case* through their own scheduling orders." *Hunter,* 2007 WI App 42, ¶ 42 (emphasis added). From this, we concluded that "when a trial court enters a scheduling order, it may, in the sound exercise of its discretion, deviate from the requirements of § 802.08(2) 'for cause shown and upon just terms.' " *Hunter,* 2007 WI App 42, ¶ 14 (citing § 802.08(2)).

*Hefty,* Nos. 2006AP1094 & 2006AP1956, unpublished order. Thus, we are confronted head-on with the question of what explanations are required of a circuit court when it exercises its discretion, in a scheduling order, to depart from the deadlines in state law. Must the circuit court "explain on the record why" a deviation from the deadline in state law is "necessary and appropriate"? *Hunter,* 300 Wis. 2d 213, ¶ 15.

¶ 50. We think not. The language from *Hunter* requiring a trial court to explain on the record why it has deviated from the scheduling deadlines in Wis. Stat. § 802.08(2) is hereby withdrawn.

¶ 51. As noted above, the circuit court has authority to enter scheduling orders "after the court consults with the attorneys for the parties and any unrepresented party." Wis. Stat. § 802.10(3). A court's failure to "consult" with the parties before issuing a scheduling order is grounds for seeking relief from the order. But after a party has consulted with the court, its objections to the order, if any, should be directed to the unreasonableness or inconvenience of one or more specific deadlines in the order. The party should ask or move to have the deadline changed.

¶ 52. Many scheduling orders come out of a scheduling conference at which the interested parties are

present and participating. Most of these conferences are informal and off the record. In an atmosphere of accommodation and agreement, there is no discernible need to go on the record to explain scheduling decisions that are not in complete conformity with state law.

¶ 53. A party who simply disagrees with a scheduling order from the outset or who later encounters changed circumstances may move the court for relief from the order. The court's response to such a motion will normally require explanation, especially if the motion is not granted. In the absence of some specific dispute, however, we see no need for the court to explain scheduling decisions on the record. There is surely a presumption that a court is acting rationally and impartially in constructing a scheduling order. There is no need for the court to go on the record to explain the fact that it deviated from a state rule to accommodate the needs of party A or to give party B the time to file a reply brief. The time for the court to explain a scheduling decision is when it must resolve a dispute. Ideally, the court should be given the opportunity to explain its order or change its order *before* the order is violated.

¶ 54. In this case, the record does not indicate why the scheduling order departed from Wis. Stat. § 802.08(2) at the time the order was issued. In other words, Judge Gibbs did not explain in August 2005 the reasons why he chose specific dates for the procedural deadlines in the order. This is not unusual for a discretionary scheduling decision, which is not typically made on the record. The lack of a record for the court's decision is not fatal. *See Kustelski v. Taylor*, 2003 WI App 194, ¶ 16, 266 Wis. 2d 940, 669 N.W.2d 780

("[W]here a court fails to articulate the basis for a discretionary decision, [the reviewing] court may independently review the record to determine whether a proper basis exists."); *State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).

¶ 55. If we had to go through an independent review, we would point to several factors. First, the order for scheduling information alerts the parties that the answers in the scheduling questionnaire "will be referred to by the court in the setting of the time and date requirements mentioned in Wis. [Stat. §] 802.10(3)(a)." Second, the scheduling order itself states that pursuant to the provisions of Wis. Stat. § 802.10(3)(c) "and upon information provided by the parties," the court orders the following. Third, the rule attached to the order provides for the filing of a reply brief, a contingency not mentioned in Wis. Stat. § 802.08(2). Finally, in hearings subsequent to Hefty's delinquency, the court relied on the "orderly administration of justice" and "order of the operation of the [c]ourt."

¶ 56. Hence, we do not fault the court for issuing a scheduling order that departed from the deadline in Wis. Stat. § 802.08(2) without explaining its reasoning on the record.

¶ 57. This, however, does not settle the issue. In *Hunter,* the court of appeals held that the circuit court erroneously relied on a local rule to reject the Hunters' affidavits as tardy. *Hunter,* 300 Wis. 2d 213, ¶ 12. The court said:

> [T]he court's time requirements are not spelled out *in the scheduling order itself.* Rather, the time requirements are laid out in an attachment to the order entitled "Standard Summary Judgment Procedure"

that is a nearly verbatim recitation of the Walworth County Circuit Court Rules. Therefore, *the scheduling order, via the attachment, simply enforces the local rules.* Again, these rules are precluded as being in conflict with the uniform rule contained in Wis. Stat. § 802.08(2).

*Id.,* ¶ 13 (emphasis added).

¶ 58. These passages raise questions about the validity of the local rule and the validity of a scheduling order that relies on that local rule.

¶ 59. A circuit court has the authority to "adopt and amend rules governing practice in that court that are consistent with rules adopted under s. 751.12 and statutes relating to pleading, practice, and procedure." Wis. Stat. § 753.35(1). The clear implication of this statute is that *local rules may not be inconsistent with state rules or statutes.* They may supplement state statutes and rules, but they may not supersede state statutes and rules.

¶ 60. Wisconsin Stat. § 802.08 is the most prominent example of this tension. Once again, this statute was amended in 1992 in response to "a plethora of local court rules" concerning deadlines related to summary judgment. *Phelps v. Physicians Ins. Co. of Wis., Inc.,* 2005 WI 85, ¶ 77, 282 Wis. 2d 69, 698 N.W.2d 643 (Prosser, J., concurring in part, dissenting in part) (quoting Judicial Council Note, 1992, § 802.08, Stats.). "The court made the change to *'preclude such local rules* and promote uniformity of practice.' " *Id.* (quoting Judicial Council Note, 1992, § 802.08, Stats.) (emphasis added).

¶ 61. In 2003 the court of appeals in *Ricco* had addressed the same Judicial Council note. *Ricco,* 266 Wis. 2d 696, ¶ 25. The court stated: "Wis. Stat. § 802.08(2), *not the local rule,* governs this issue [late

filing]. The Wantz affidavit was timely." *Id.*, ¶ 26 (emphasis added).

¶ 62. In 2006 the court of appeals in *David Christensen* held that "Marathon County *local rule* 4.20(1)(b) *is precluded* as being in conflict with the uniform rule contained in Wis. Stat. § 802.08(2)." *David Christensen,* 297 Wis. 2d 765, ¶ 13 (emphasis added).

¶ 63. *Ricco* and *David Christensen* help explain why the *Hunter* court wanted circuit courts to explain deviations from Wis. Stat. § 802.08(2) on the record. The court of appeals did not want circuit courts to make "end-run[s]" around § 802.08(2) by enforcing invalid local rules through scheduling orders. *Hunter,* 300 Wis. 2d 213, ¶ 15. This is why the court of appeals determined that the scheduling order in the *Hunter* case "simply enforces the local rules." *Id.*, ¶ 13.

¶ 64. We conclude that the portion of the Walworth County Circuit Court Rules—Civil that establishes a time for responding to a summary judgment motion that is different from the time set out in Wis. Stat. § 802.08(2) is invalid. We need not rely solely on *Ricco, David Christensen,* and *Hunter* for this conclusion. The Walworth County Circuit Court Rules, as revised in February 2006, themselves state, under the heading "Adoption/Amendment of Court Rules," that: "These rules . . . are intended to supplement state statutes and Supreme Court Rules, and if in conflict therewith, *shall be deemed void.*" (Emphasis added.)

¶ 65. Because the court's scheduling order attempted to apply a void rule by attaching it to the order, the scheduling order's deadline for responding to a motion for summary judgment was invalid.

¶ 66. It is important to note that the circuit court could have imposed the same 20–day time frame for

responding to a summary judgment motion by specifying the response time "*in the scheduling order itself.*" *Hunter,* 300 Wis. 2d 213, ¶ 13. If the court had entered a notation on the face of the scheduling order that "materials opposing the motion for summary judgment shall be filed within 20 days after the motion is served," or words to that effect, the scheduling order would likely have been upheld.

¶ 67. We have no reservations in requiring that a response time different from the response time in Wis. Stat. § 802.08(2) be specified in the scheduling order, directly below the deadline for filing a motion for summary judgment. This requirement complies with a literal reading of Wis. Stat. § 802.08(2): "Unless earlier times are specified in the scheduling order." Placement of the response time in the text of the scheduling order gives the clearest possible notice to the non-movant so that the non-movant can seek relief from the scheduling order promptly if the time to respond is deemed inadequate. This placement avoids the necessity of the non-movant poring over an elaborate local rule to find three key words: "within 20 days." This placement also severs the court's scheduling date from a local rule that may be invalid.

¶ 68. In Walworth County's case, there are at least two additional reasons why the response deadline should be specified in the text of the scheduling order. Walworth County's rules have been and still are internally inconsistent with respect to summary judgment motions. *Compare* Walworth Cty. Ct. R. 2. B. *with* Walworth Cty. Ct. R. 2. F. 4.[17] Moreover, Walworth County amended its

---

[17] These rules can be retrieved online on the State Bar of Wisconsin's website at the following address: http://www. wisbar.org/AM/Template.cfm?Section=Civil_rules (last visited July 2, 2008).

rules again in May 2007, so that rule 2. F. 4. now provides only "five (5) days" to respond to a motion for summary judgment. We suspect that on occasion a party may seek additional time to respond and will ask that the additional time be specified in the scheduling order.

¶ 69. To sum up, the circuit court properly exercised its discretion in entering a scheduling order that sought to set a 20 day time period for responding to a summary judgment motion. However, the circuit court erroneously exercised its discretion by relying on a void local rule to establish the time to respond and by failing to specify its time "in the scheduling order itself." *Hunter,* 300 Wis. 2d 213, ¶ 13.

## C. Sanction

¶ 70. This brings us to the circuit court's exercise of discretion in sanctioning Hefty by striking her summary judgment response, which ultimately resulted in dismissal of her complaint with prejudice and granting of summary judgment to Strickhouser.

¶ 71. It is well established that a trial court has both statutory and inherent authority to sanction a party for failing to obey a court order. *See Johnson,* 162 Wis. 2d at 273–74; *Belich v. Szymaszek,* 224 Wis. 2d 419, 428, 592 N.W.2d 254 (Ct. App. 1999). The circuit court's discretionary decision to sanction a party will be upheld if the court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Indus. Roofing,* 299 Wis. 2d 81, ¶ 41 (citing *Johnson,* 162 Wis. 2d at 273). The question is not whether this court would have

granted the same sanction if it had decided the original matter; it is whether the circuit court erroneously exercised its discretion when it made its decision. *See Johnson,* 162 Wis. 2d at 273 (citing *Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639, 642 (1976)).

¶ 72. Violations of a circuit court's scheduling order are governed by Wis. Stat. § 802.10(7). Wisconsin Stat. § 802.10(7) provides: "Sanctions. Violations of a scheduling or pretrial order are subject to [Wis. Stat. §§] 802.05, 804.12 and 805.03." Section 805.03 permits discretionary sanctions and reads:

> For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a).

¶ 73. Wisconsin Stat. § 805.03 is based on Federal Rule of Civil Procedure 41(b), and replaced former Wis. Stat. § 269.25. Judicial Council Committee's Note, 1974, § 805.03, Stats. Section 805.03 permits strong sanctions for three kinds of dilatory and evasive tactics: (1) failure to prosecute; (2) failure to comply with procedure statutes; and (3) failure to comply with any court order. 3A Jay E. Grenig, *Wisconsin Practice: Civil Procedure* § 503.1, at 12 (West, 3d ed. 2003).

¶ 74. Under Wis. Stat. § 805.03, a court may make such orders "as are just," including dismissal of actions or entry of default judgment, where a party fails to obey any court order. Wis. Stat. § 805.03; *see* 3 Jay E. Grenig, *Wisconsin Practice: Civil Procedure,* § 210.7, at 376 (West, 3d ed. 2003).

¶ 75. The circuit court sanctioned Hefty by granting Strickhouser's motion to strike Hefty's response. It is clear from the record that the impetus for the circuit court's sanction was Hefty's untimely response. The court commented during the April 7 motion hearing that it did not rule on the merits of Strickhouser's summary judgment motion because it was instead ruling on procedural grounds, namely, the untimely filing.

¶ 76. Litigants are expected to follow circuit court scheduling orders. Failure to do so is subject to sanction at the discretion of the circuit court. Wis. Stat. § 802.10(7); *Indus. Roofing,* 299 Wis. 2d 81, ¶ 41. We acknowledge that a circuit court has broad discretion to sanction a party for the failure to comply with a court order, including a scheduling order. *See Johnson,* 162 Wis. 2d at 273. There is no question that Hefty's counsel failed to fully review the court's scheduling order and that Hefty's untimely submission flowed directly from that deficiency. Failure to fully review the scheduling order prevented Hefty from either challenging or complying with the order, instead of violating it.

¶ 77. Nonetheless, as we concluded above, the circuit court incorporated, by attachment, a void local rule into its scheduling order. The fact that the court's sanction was premised upon the violation of a deadline based upon a void local rule indicates that the court applied an improper standard of law. Consequently, we cannot sustain the circuit court's sanction because it constituted an erroneous exercise of discretion.

¶ 78. Overturning the circuit court's sanction on the circuit court's error of law obviates any need to review whether the sanction was "just" under Wis. Stat. § 805.03.

## III. CONCLUSION

¶ 79. We affirm the decision of the court of appeals, but on different grounds. The circuit court was not required to demonstrate on the record why its scheduling order deviated from § 802.08(2) to properly exercise its scheduling discretion under Wis. Stat. § 802.10. However, the circuit court erroneously exercised its discretion by entering a scheduling order that incorporated a void local rule and by striking Hefty's response as a sanction for untimely filing, which ultimately resulted in dismissal of her complaint with prejudice and summary judgment to Strickhouser. Accordingly, we affirm and remand.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

¶ 80 ANNETTE KINGSLAND ZIEGLER, J. (*dissenting*). I agree with much of the majority opinion, but I write separately because I respectfully disagree with the majority's conclusion that "the circuit court erroneously exercised its discretion by entering a scheduling order that incorporated a void local rule . . . ." Majority op., ¶ 5.

I

¶ 81. I agree with a number of the majority's conclusions: To begin with, I agree with the majority's determination that "Wisconsin circuit courts have discretion to control their dockets." Majority op., ¶ 31. I further agree with the majority that "Wisconsin Stat. § 802.10 addresses 'calendar practice' and provides that a circuit court 'may enter a scheduling order on the court's own motion or on the motion of a party.' " *Id.*

¶ 82. We must be cognizant, however, of the fact that circuit courts are required to adequately manage a busy docket, and they need the discretion to render justice. Circuit court judges are responsible for an enormous volume of cases. In order to fairly, effectively, and efficiently administer justice, the judge needs the ability to set meaningful deadlines. This court has acknowledged the value of timely processing cases at the circuit court level. In fact, in addition to the requirement that circuit courts certify that they have no "matters awaiting decision beyond" the 90–day period, *see* SCR 70:36, this court also sets case processing guidelines for Wisconsin circuit court judges. By way of example, the circuit court "case processing time standards" for a civil case such as this indicates that this case should be concluded within 360 days.

¶ 83. For any number of reasons, this case was not concluded within 360 days. The case at issue was filed February 3, 2004. The scheduling order was sent to counsel on August 3, 2005. Various motions for sanctions were filed by both parties. On February 1, 2006, the defendants filed a notice of motion and motion for summary judgment. Thereafter, the plaintiff's counsel failed to comply with the scheduling order, which incorporated the local rule on its face, when filing a response to the defendant's motion for summary judgment.

¶ 84. I agree with the majority that "[t]he scheduling questionnaire used by the circuit court was sufficient to satisfy Wis. Stat. § 802.10(3)." Majority op., ¶ 37. I also agree with the majority that there is "no erroneous exercise of discretion in the circuit court employing a scheduling questionnaire to create its scheduling order." Majority op., ¶ 38. Here, the court engaged in consultation with the parties through the scheduling questionnaire.

566

¶ 85. The majority correctly states that Wis. Stat. § 802.08 provides flexibility for a trial court to specify earlier times in the scheduling order. This makes sense because trial courts need to be given broad discretion in how to handle their calendars and in how to properly address individual issues reflected in individual cases. I agree with the majority that "the statute's plain language and the Judicial Council Note indicate that *scheduling orders* may trump Wis. Stat. § 802.08(2)." Majority op., ¶ 45.

¶ 86. Correctly, the majority opinion recognizes that scheduling order deadlines may supersede statutory deadlines. Majority op., ¶ 48. I agree with the majority opinion that the language in *Hunter v. AES Consultants, Ltd.*, 2007 WI App 42, 300 Wis. 2d 213, 730 N.W.2d 184, requiring a trial court to explain on the record its deviation from the scheduling deadlines, should be withdrawn. Majority op., ¶ 50.

¶ 87. I likewise agree with the majority that:

There is surely a presumption that a court is acting rationally and impartially in constructing a scheduling order. There is no need for the court to go on the record to explain the fact that it deviated from a state rule to accommodate the needs of party A or to give party B the time to file a reply brief. The time for the court to explain a scheduling decision is when it must resolve a dispute. Ideally, the court should be given the opportunity to explain its order or change its order *before* the order is violated.

Majority op., ¶ 53.

## II

¶ 88. While I agree with much of the majority opinion, I disagree with the majority's conclusion that deadlines must be placed in the scheduling order before

the judge's signature in order for those deadlines to be enforceable. The majority states that "[i]t is important to note that the circuit court could have imposed the same 20-day time frame for responding to a summary judgment motion by specifying the response time '*in the scheduling order itself.*' " Majority op., ¶ 66. The majority determines that the scheduling order only implicitly incorporated a void local court rule. Majority op., ¶ 47.

¶ 89. I part ways with the majority's determination that this scheduling order merely implicitly incorporates deadlines from a void local court rule. In the case at issue, the scheduling order specifically stated the following: "Motion for judgment on pleading/summary judgment must be filed by 02/01/2006." Below this language the following language appears: "[SEE ATTACHED SHEET FOR MOTION PROCEDURE]." It is undisputed that the parties in this case were provided with the scheduling order and the attached sheet. The attached sheet for motion procedure is just over one page long. It is also undisputed that counsel, who failed to meet the deadlines required in the scheduling order, also failed "to fully review the notice accompanying that scheduling order."

¶ 90. I write separately because the majority's conclusion that the motion practice must be specified in the order itself is a distinction without a difference. While placement of a response time in the text of the scheduling order may give clear notice to the parties, that notice is irrelevant if a party fails to carefully review the scheduling order. Reading the order gives notice to the party whether the motion practice is in the first page or in the referenced attachment. It seems curious to conclude that if the order has the same information printed in a page that precedes the circuit court judge's signature it is enforceable, but if the

information appears on a clearly referenced attached sheet after the judge's signature, it is unenforceable.

¶ 91. It is reasonable for a judge to expect that the parties to a lawsuit will adhere to a scheduling order. Here, the scheduling order on its face puts the parties and counsel on notice of the court's expectations regarding the deadlines.

## III

¶ 92. As a part of handling a busy calendar and giving parties their day in court, circuit court judges must possess sufficient discretion. In a hectic schedule, it is imperative that the parties follow court orders. When deadlines are disregarded a court calendar can quickly become unmanageable. One can imagine the repercussions from a circuit court judge's order only having meaning on occasion. Judges must have the ability to make discretionary case-by-case distinctions and allowances in order for justice to be properly dispensed.

¶ 93. I agree with much of the majority opinion, but I write separately because I respectfully disagree with the majority's conclusion that "the circuit court erroneously exercised its discretion by entering a scheduling order that incorporated a void local rule . . . ." Majority op., ¶ 5.

¶ 94. For the foregoing reasons, I respectfully dissent.