COURT OF APPEALS
DECISION
DATED AND FILED

February 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP716**

Cir. Ct. No. 2018PR34

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE ESTATE OF VAWN C. MARSHALL:

TED MARSHALL AND DIANE NOVILLO,

APPELLANTS,

V.

DAWN M. BROGLE,

RESPONDENT.

APPEAL from an order of the circuit court for Vilas County: NEAL A. NIELSEN III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Ted Marshall ("Ted") and Diane Novillo, pro se, appeal an order dismissing their petition against Dawn Brogle in this trust dispute. Ted and Novillo argue that the circuit court erred by requiring the petitioners to post a $100,000 performance bond pursuant to WIS. STAT. § 879.39 (2017-18),[1] and by dismissing the petition for lack of proof.  Ted and Novillo also allege that the court was biased against them.  We reject these arguments and affirm the order.

## BACKGROUND

¶2    Brogle, Novillo, Ted Marshall, and Deborah Marshall are the adult children of Vawn Marshall.  In 1997, Vawn, an Arizona resident, created the "Vawn C. Marshall Revocable Living Trust," designating Brogle as trustee upon Vawn's "death, resignation, or incapacity."  Over the ensuing years, Vawn whited out portions of the trust document and inserted handwritten changes.  In 2007, Vawn signed a "First Amendment" to the trust that incorporated all of her handwritten changes.

¶3    After Vawn passed away on May 6, 2012, Brogle became the successor trustee and subsequently distributed various assets.  Dissatisfied with the distribution of trust assets and Brogle's unwillingness to provide requested trust documents, Ted, Deborah, Novillo, and Novillo's son, Keaton Barker, filed the underlying action.  The petitioners alleged that: (1) Brogle breached her duties as trustee and exerted undue influence upon Vawn in order to obtain a windfall; (2) Vawn was not competent to enter into the trust in 1997 or to amend it

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

thereafter; and (3) Brogle had deceived the petitioners and diverted or stole trust assets. The petition sought: (1) a copy of the trust documents; (2) Brogle's removal as trustee; (3) appointment of both a successor trustee and a receiver; (4) a declaration that Brogle had breached her fiduciary duty; (5) attorney fees; and (6) damages.

¶4 The circuit court ordered Brogle to produce a copy of the trust documents and an accounting of the trust assets, and Brogle complied. Brogle then moved the court for a bond, and the court ordered the petitioners to deposit a $100,000 performance bond with the Vilas County Register in Probate's office "to protect the trust and the trustee from any unnecessary Court costs or [attorney] fees incurred" in the matter.

¶5 At a subsequent status hearing, the circuit court noted that the performance bond had not been posted, as ordered, and Ted informed the court that the petitioners would not pay the bond. The petitioners nevertheless sought a ruling on the petition without presenting any further evidence or testimony. The court dismissed the petition, citing the lack of proof. Ted and Novillo now appeal.

## DISCUSSION

¶6 Ted and Novillo argue that the circuit court erred by requiring the petitioners to post a $100,000 performance bond. We disagree. A circuit court has discretion to order a performance bond under WIS. STAT. § 879.39, which provides:

> In all cases under [WIS. STAT.] s. 879.33[2] the court may require the claimant or contestant to give a bond in such sum and with such surety as is approved by the court, to the effect that he or she will pay all costs that may be awarded by the court in the proceeding against him or her. A judgment for costs shall be against the claimant or contestant and the surety.

Discretionary decisions are reviewed for an erroneous exercise of discretion. *See Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 305, 470 N.W.2d 873 (1991). Under that standard, we affirm the circuit court if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Hefty v. Strickhouser*, 2008 WI 96, ¶71, 312 Wis. 2d 530, 752 N.W.2d 820.

¶7 In requesting a performance bond, Brogle emphasized her duty, as trustee, to defend the trust. Brogle added: "[I]n the event the petitioners lose … it is an appropriate remedy to reimburse the trustee theoretically from trust assets which have now been distributed or in the alternative from the people who are attacking indirectly their fees." Brogle further argued that a bond was appropriate because the petitioners, who were representing themselves, lived out of state and "this type of litigation through family members tends to be very emotionally driven."

¶8 Acknowledging that there were no longer any assets in the trust, the circuit court determined that requiring a performance bond was appropriate before the matter proceeded any further. The court noted that given the nature of the petitioners' claims—including a challenge to Vawn's competency when she

---

[2] WISCONSIN STAT. § 879.33 allows costs to a prevailing party in all appealable contested matters in court.

created the trust, the cost of "expert testimony, depositions, review of medical records, testimony of other people, [and] getting the witnesses … to court"—their challenge presented "a huge uphill battle." The court concluded that a performance bond was warranted because there was "no other way to make Ms. Brogle whole if she is put to defending herself as trustee in this matter and is successful." Under these circumstances, the court reasonably exercised its discretion by ordering a $100,000 bond as security for costs. The petitioners' failure to pay the bond, on its own, justified dismissal of their action. Because the court nevertheless dismissed the petition on its merits, we will also review that decision.

¶9    As the circuit court recognized, the petitioners failed to present adequate proof to justify the relief they sought. The court reviewed the trust documents and determined that the level of detail in the accounting provided by Brogle was "standard for matters of trust accounting" and, in the absence of other proof, the accounting was appropriate. Moreover, the accounting appeared to accurately reflect the disposition of trust assets to those petitioners named as beneficiaries under the trust. Specifically, the trust left real estate to Deborah and a car to Ted. Ted acknowledged his receipt of the car. To the extent Deborah alleged that Brogle sold the real estate at $11,000 below fair market value, leaving Deborah with less money than she believed she was entitled, the court found there was no evidence to support that claim.

¶10    The circuit court likewise found no evidence to support the petitioners' claims that Vawn lacked competency to create the trust in 1997, or that she was otherwise subject to undue influence by Brogle. To show undue influence, the petitioners had to prove Vawn's susceptibility to undue influence, together with Brogle's opportunity and disposition to influence, and the

achievement of a coveted result. *See* ***Hoeft v. Friedli***, 164 Wis. 2d 178, 185, 473 N.W.2d 604 (Ct. App. 1991). In the alternative, the petitioners could attempt to show that a confidential or fiduciary relationship existed between Vawn and Brogle, and that there were suspicious circumstances surrounding the creation of the trust. *See* ***id.*** at 184. The burden was on the petitioners to prove undue influence by clear, satisfactory, and convincing evidence. *See* ***Lee v. Kamesar***, 81 Wis. 2d 151, 159, 259 N.W.2d 733 (1977).

¶11 Here, the circuit court recognized that the challenge to Vawn's competency more than twenty years after the fact would have required proof through expert testimony and witnesses, and the petitioners had not produced such proof. The court was ultimately "satisfied that … most of the questions that the [petitioners] had resulted from … poor communication between family members." The court further acknowledged that Brogle's initial failure to provide trust documents to her siblings "contributed to suspicions of inappropriate financial dealings." Upon its review of the trust documents, however, the court determined that "most of the children really don't have a claim in the trust." Ted was named as a beneficiary only with respect to receiving an automobile that he acknowledged receiving. Deborah's interest related to the real estate, which the court addressed, and Novillo only had a contingent interest in the trust as a beneficiary in the event of an "other person[']s death."

¶12 Ted and Novillo nevertheless assert that Vawn's informal changes to the trust document constituted "unusual circumstances" under the law. There is, however, no record support for such a claim. In any event, the 2007 amendment formalized Vawn's handwritten changes and, at all times relevant to this action, the petitioners knew of that amendment, having attached the same to their petition. The court, therefore, properly dismissed these claims for lack of proof.

¶13 Next, Ted and Novillo allege that "judicial bias and mistreatment" of the pro se petitioners warrant reversal of the order on appeal. There is no basis in the record for concluding that any actions or comments on the part of the circuit court established bias. Rather, the bulk of the court's comments were innocuous and seemingly aimed at trying to help the pro se petitioners, consistent with the Code of Judicial Conduct. Specifically, SCR 60.04(1)(hm) provides that "[a] judge may make reasonable efforts, consistent with the law and court rules, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard." The court emphasized the burden of proof for challenging Vawn's competency in an attempt to encourage the out-of-state, pro se petitioners to consult an attorney.

¶14 Ted and Novillo also allege that the circuit court exhibited bias by "completely ignoring" their claim that Brogle's attorney "harassed" Deborah by contacting her directly. However, nothing in the record establishes any sort of harassment and, as the court properly informed them, counsel had "every authority" to contact each of them directly because they were proceeding pro se.

¶15 Finally, Ted and Novillo intimate that the circuit court exhibited bias when it overlooked Brogle's earlier failures to perform the duties of a trustee, such as providing the trust documents when requested by her siblings. Ted and Novillo, however, fail to establish that the court erroneously exercised its discretion by simply curing any alleged breach by Brogle rather than removing her as trustee, especially given that the trust administration is now complete. Ultimately, we discern no bias against, or mistreatment of, the petitioners by the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.