COURT OF APPEALS
DECISION
DATED AND FILED

May 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP186**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CV143

**IN COURT OF APPEALS
DISTRICT III**

LARRY W. RADER,

　PLAINTIFF-APPELLANT,

V.

ACUITY, A MUTUAL INSURANCE COMPANY AND PINE RIDGE TRAILS COMMUNITY SERVICES ASSOCIATION, INC.,

　DEFENDANTS-RESPONDENTS.

　　　　APPEAL from an order of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Affirmed*.

　　　　Before Stark, P.J., Hruz and Seidl, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Larry Rader, pro se, appeals an order dismissing with prejudice his claims against Pine Ridge Trails Community Services Association, Inc., and its insurer, Acuity, a Mutual Insurance Company. On appeal, Rader's statement of the issues purports to raise two issues for our review: (1) did the circuit court lack subject matter jurisdiction over this lawsuit; and (2) did the court err by denying Rader's October 9, 2018 summary judgment motion, which sought judgment in the amount of $1,834,000, plus 12% interest under WIS. STAT. § 628.46(1) (2015-16).[1] We conclude the court had subject matter jurisdiction, and it properly struck Rader's summary judgment motion as untimely. We also reject, or decline to consider, three other arguments that Rader appears to raise in his appellate briefs. We therefore affirm.

## BACKGROUND

¶2 This lawsuit arose from a dispute between Rader and Pine Ridge, his condominium association. In 2016 and 2017, Pine Ridge's architectural review committee directed Rader to replace four of his condominium's windows. Rader refused to do so. On June 15, 2017, Rader sent a "Claim for Damages" to Pine Ridge, in which he asserted the windows were "not in need of replacement and [were] in good operating order." Rader demanded $100,000 in damages for slander of title and breach of privacy based on the architectural review committee's actions. On June 19, Rader reported a liability claim to Acuity, Pine Ridge's insurer, based on the same underlying facts.

¶3 In August 2017, Lisa Werger, an Acuity claims adjuster, inspected Rader's windows and found them to be in operating condition. Werger

---

[1] All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

subsequently spoke with Pine Ridge's president regarding Rader's windows. By an email dated August 10, 2017, Werger advised Rader that she believed the dispute could be resolved if Rader provided Pine Ridge with a copy of a window contractor's report indicating that Rader's windows were in good operating condition.

¶4      Rader then commenced this action by filing a summons and complaint against Pine Ridge and Acuity in Sheboygan County Circuit Court on September 15, 2017. Rader's complaint referenced the window dispute, as well as an allegation that Pine Ridge's sprinkler system had damaged his property in 2015. Rader asserted four causes of action against Pine Ridge: (1) breach of privacy; (2) "Slander, Libel, Aspersion, and Defamation"; (3) trespass; and (4) "Breach of Condominium plat covenants, and By-laws." Rader also asserted a fifth cause of action against Acuity for "Tortious Interference or Bad Faith."

¶5      On September 29, 2017, Rader sent counsel for Pine Ridge and Acuity a settlement demand in the amount of $1.8 million.[2] On October 4, Rader sent defense counsel a second copy of the same demand, with additional handwritten notes and attachments. Although Rader asserts at various points in his appellate briefs that the parties reached a settlement in 2017, he provides no record citations in support of that proposition. Pine Ridge and Acuity assert no settlement was ever reached.

¶6      Instead, the record reflects that on October 12, 2017, Pine Ridge and Acuity filed an answer denying the majority of the allegations in Rader's complaint.

---

[2] On appeal, Rader repeatedly asserts that his settlement demands were for $1,834,000. However, the record reflects that Rader demanded $900,000 in damages on his tortious interference/bad faith claim, and $900,000 in damages on his other claims. Thus, Rader demanded total damages of $1.8 million, not $1,834,000.

The answer also asserted various affirmative defenses. In particular, the answer asserted that under Wisconsin law, including ***Kranzush v. Badger State Mutual Casualty Co.***, 103 Wis. 2d 56, 307 N.W.2d 256 (1981), Rader, a third-party claimant, could not maintain a bad faith claim against Acuity, an opposing defendant's liability insurer.

¶7      On the same day they filed their answer, Pine Ridge and Acuity filed a motion seeking a discretionary change of venue under WIS. STAT. § 801.52. Specifically, the motion requested that venue be changed to Marathon County because Rader was a resident of Marathon County; Pine Ridge, Rader's condominium, and defense counsel's law firm were located in Marathon County; and various witnesses were residents of Marathon County. Pine Ridge and Acuity conceded that Acuity's principal place of business was located in Sheboygan County. However, they asserted Sheboygan County was one of many counties where Acuity did business and was therefore no more convenient a venue for Acuity than Marathon County. In fact, they asserted Marathon County would be a more convenient venue for Acuity because Werger, a key witness, "lives and works from her home in Marathon County, not Sheboygan."

¶8      A hearing on Pine Ridge and Acuity's motion for change of venue was scheduled for January 5, 2018. Before that hearing, Rader filed three motions for summary judgment on his tortious interference/bad faith claim against Acuity. Rader also filed a one-page objection to the venue change motion, which asserted: "Not only would such an order be an abuse of discretion[,] but the court lacks authority to do so here until the cause of action against ACUITY is decided by summary judgment or mediation or other resolution by [the Sheboygan County Circuit Court]."

¶9     During the January 5, 2018 hearing, Judge Daniel J. Borowski conditionally granted Pine Ridge and Acuity's change of venue motion.  The conditional issues were subsequently resolved without a further hearing, and Judge Borowski entered a written order changing venue to Marathon County on February 6, 2018.  After the case was transferred to Marathon County, Rader filed a "Notice of No Jurisdiction" on March 8, 2018.  In that filing, Rader again asserted that Judge Borowski had "no authority to order a change of Venue to Marathon County."

¶10     In an unrelated motion filed on May 29, 2018, Rader made passing references to the Marathon County Circuit Court's "limited JURISDICTION" and again asserted the change of venue was "void for Lack of Jurisdiction."  On July 13, 2018, Rader filed a "JURISDICTIONAL Motion," which asked the circuit court to address whether it had jurisdiction over Rader's lawsuit before considering a pending defense motion to compel discovery.

¶11     No hearing date was scheduled on Rader's jurisdictional motion, and based on a local rule, the circuit court refused to consider that motion during an unrelated motion hearing on August 16, 2018.  The court stated it instead intended to enter a scheduling order to "get this [case] back on track."  Dissatisfied with the court's refusal to address his jurisdictional motion, Rader petitioned our supreme court for a supervisory writ.  The supreme court dismissed his petition for failing to satisfy statutory requirements.  Rader then moved for reconsideration.  The court granted his motion, but it ultimately denied his petition for a supervisory writ.

¶12     In the meantime, the circuit court entered a scheduling order on September 27, 2018.  The scheduling order set a deadline for the defendants to respond to Rader's pending motions.  It also required the defendants to file any

dispositive motions by February 1, 2019. It did not, however, set forth a deadline for Rader—who had already filed three summary judgment motions—to file dispositive motions.

¶13 Pine Ridge and Acuity subsequently filed a brief in response to Rader's pending motions, with supporting affidavits. Much of their brief pertained to Rader's summary judgment motions, arguing Rader was not entitled to judgment against Acuity on his bad faith/tortious interference claim. Instead, the defendants contended Acuity was entitled to summary judgment on that claim. Among other things, the defendants argued that under **Kranzush**, Rader lacked standing to pursue a bad faith claim against Acuity because Wisconsin courts do not permit bad faith claims "by an injured or damaged third-party claimant against a liability insurer for the injuring or damaging party."

¶14 In response to Rader's jurisdictional motion, the defendants noted Rader had clarified during the August 16, 2018 hearing and in his petition for a supervisory writ that he was disputing Marathon County's "subject matter jurisdiction" to hear his case. The defendants observed that article VII, section 8 of the Wisconsin Constitution and WIS. STAT. § 753.03 grant circuit courts subject matter jurisdiction over all civil actions and proceedings in this state, unless otherwise provided by law. The defendants theorized that Rader was confusing subject matter jurisdiction with venue, which was a separate issue that had already been decided against him by Judge Borowski.

¶15 On October 9, 2018, while briefing was underway on Rader's pending motions, Rader filed a motion for "Judgment pursuant to 628.46 Wis. Stats.," which was effectively a new summary judgment motion. Rader asked the circuit court to enter a judgment of $1,834,000 against Acuity, along with 12% interest on that

6

amount since November 4, 2017. Without any factual support, Rader contended Acuity had determined in the summer of 2017 that his claims against Pine Ridge "were meritorious and covered by policy Z01457 issued to [Pine Ridge]." Rader therefore argued that by failing to pay his September 29 and October 4, 2017 settlement demands, Acuity had "admitted liability under Wis. Stat. 628.46," and Rader was entitled to the entire amount of his demands, plus 12% interest.[3]

¶16 Pine Ridge and Acuity objected to Rader's new summary judgment motion on several grounds. As relevant here, they argued the motion was untimely under WIS. STAT. § 802.08(1) because it was not filed within eight months after Rader filed his summons and complaint or within an alternative deadline set forth in a scheduling order. Pine Ridge and Acuity therefore asked the circuit court to deny Rader's motion without further briefing or argument.

¶17 The circuit court issued a written decision on Rader's pending motions on January 17, 2019. The court agreed with Pine Ridge and Acuity that Rader's October 9, 2018 summary judgment motion was untimely, and it therefore ordered that motion stricken. The court reasoned: "The scheduling order had contemplated that the plaintiff's motions were already on file, and set dates only for the defendants' response and the plaintiff's reply to that response. Accordingly, any later-filed motions are untimely."

¶18 As for Rader's jurisdictional motion, the circuit court agreed with Pine Ridge and Acuity that Rader had confused the concepts of subject matter jurisdiction and venue. The court noted that jurisdiction and venue are "separate

---

[3] Rader relied on the 2015-16 version of WIS. STAT. § 628.46(1), which required an insurer to "promptly pay every insurance claim" and stated that "[a]ll overdue payments shall bear simple interest at the rate of 12 percent per year." The statute was amended in April 2018 to reduce the interest rate on overdue insurance claims to 7.5% per year. *See* 2017 Wis. Act 235, § 4.

7

concepts," and subject matter jurisdiction is granted to circuit courts by our state constitution. The court also concluded the change of venue to Marathon County was "proper," and "even if it were not, a defect in venue would not affect the Court's jurisdiction."

¶19 Turning to Rader's remaining summary judgment motions on his bad faith/tortious interference claim against Acuity, the circuit court noted that Rader had not "offered any proof" of the five elements required to establish a tortious interference claim. Moreover, the court observed that since filing his complaint, Rader had "argued exclusively in terms of bad faith" with respect to his claim against Acuity. The court therefore stated that to the extent Rader "intended to assert a claim under a theory of tortious interference, it has not been sufficiently developed to be considered." As for Rader's bad faith claim, the court concluded he did not have standing to assert that claim because he was not the named insured under the Acuity policy and was instead a third-party claimant. The court cited *Kranzush* for the proposition that an insurer "owes no duty to the third-party claimant to settle or to negotiate in good faith." *Kranzush*, 103 Wis. 2d at 72.

¶20 The circuit court therefore denied Rader's summary judgment motions regarding his tortious interference/bad faith claim against Acuity and instead granted Acuity summary judgment on that claim. The court held, however, that Acuity would remain a party to the action because of its potential liability for Rader's remaining claims under the direct action statute, WIS. STAT. § 632.24. Accordingly, the court concluded its written decision was not a final order for purposes of appeal because it did not "fully dispose of the entire matter in litigation as to any party."

¶21 On January 18, 2019—one day after the circuit court issued its written decision on Rader's pending motions—Rader filed a notice of appeal from the court's decision. On January 22, Rader filed a petition for leave to appeal the court's decision under WIS. STAT. § 808.03(2).

¶22 Two days later, on January 24, 2019, the parties entered into a written stipulation for dismissal, by which they agreed that all of Rader's remaining claims against Pine Ridge and Acuity would be dismissed on the merits and with prejudice. The stipulation did not affect Rader's bad faith/tortious interference claim against Acuity, which had already been dismissed. Instead, the stipulation stated it was intended to "dismiss all presently remaining claims between the parties with prejudice and bring finality to this circuit-court action, allowing [Rader] to appeal the Court's January 17, 2019, decision … as a matter of right." In accordance with the parties' stipulation, the circuit court entered a final order dismissing Rader's remaining claims against Pine Ridge and Acuity, and Rader now appeals.

## DISCUSSION

¶23 As noted above, the statement of issues in Rader's brief-in-chief purports to raise two issues for our review: (1) did the circuit court lack subject matter jurisdiction over this lawsuit; and (2) did the court err by denying Rader's October 9, 2018 summary judgment motion seeking $1,834,000, plus 12% interest under WIS. STAT. § 628.46(1). We address each of those issues below. Thereafter, we address three unrelated arguments that Rader appears to raise at various points in his appellate briefs.

9

## I. Subject matter jurisdiction

¶24    Subject matter jurisdiction refers to the power of a court to decide certain types of actions. *City of Eau Claire v. Booth*, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738. We independently review whether a circuit court had subject matter jurisdiction over a particular case. *Id.*, ¶6.

¶25    Wisconsin circuit courts derive their subject matter jurisdiction from our state constitution, which states, in relevant part: "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state." WIS. CONST. art. VII, § 8. WISCONSIN STAT. § 753.03, in turn, provides that circuit courts have "the general jurisdiction prescribed for them by article VII of the constitution" and have "power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court." Rader does not assert that any exception to the circuit court's general subject matter jurisdiction applies in this case, nor does he argue that another court has been granted "exclusive jurisdiction" over this action. We therefore reject Rader's argument that the circuit court lacked subject matter jurisdiction.

¶26    A circuit court's ability to exercise its subject matter jurisdiction may be affected by noncompliance with statutory requirements pertaining to the invocation of the court's jurisdiction in individual cases. *Booth*, 370 Wis. 2d 595, ¶7. However, noncompliance with statutory mandates merely affects a court's competency, which is not jurisdictional and which instead refers to a court's power to exercise its subject matter jurisdiction in a particular case. *Id.* Rader does not develop any argument that the circuit court in this case lacked competency to exercise its subject matter jurisdiction over his lawsuit. We therefore decline to

address that issue. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (we will not abandon our neutrality to develop arguments for a party).

¶27 Ultimately, we agree with the defendants and the circuit court that Rader's arguments purportedly relating to subject matter jurisdiction actually pertain to venue. "[T]he basic function of venue statutes is to set a fair and convenient location for trial." *Voit v. Madison Newspapers, Inc.*, 116 Wis. 2d 217, 224, 341 N.W.2d 693 (1984). "A defect in venue is not jurisdictional and does not affect the competence of the court." *Kohlbeck v. Reliance Constr. Co.*, 2002 WI App 142, ¶20, 256 Wis. 2d 235, 647 N.W.2d 277 (quoting Judicial Council Note, 1983, WIS. STAT. § 801.50).

¶28 In this case, Judge Borowski granted Pine Ridge and Acuity's motion to change venue under WIS. STAT. § 801.52, which provides that a court "may at any time, upon its own motion, the motion of a party or the stipulation of the parties, change the venue to any county in the interest of justice or for the convenience of the parties or witnesses." We review a circuit court's decision on a motion to change venue for an erroneous exercise of discretion. *See State v. Hereford*, 224 Wis. 2d 605, 612, 592 N.W.2d 247 (Ct. App. 1999). Here, however, Rader does not develop any argument that Judge Borowski erroneously exercised his discretion by granting Pine Ridge and Acuity's motion to change venue. Again, we will not abandon our neutrality to develop such an argument for him. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

¶29 Moreover, the appellate record does not include a transcript of the January 5, 2018 hearing during which Judge Borowski conditionally granted the motion to change venue. It is the appellant's burden to ensure that the record is

sufficient for us to review the issues raised on appeal, and we assume that any missing materials support the circuit court's decision. *See **State Bank of Hartland v. Arndt***, 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986). We therefore assume that the missing transcript of the January 5, 2018 hearing supports Judge Borowski's discretionary decision to grant Pine Ridge and Acuity's motion to change venue. Accordingly, that decision provides no basis for reversal.

## II.  Denial of Rader's October 9, 2018 summary judgment motion

¶30    Rader next argues the circuit court erred by denying his October 9, 2018 summary judgment motion, which asked the court to grant him judgment in the amount of $1,834,000, plus 12% interest under WIS. STAT. § 628.46(1). As Pine Ridge and Acuity correctly note, however, the court did not deny Rader's summary judgment motion. Instead, the court struck the motion as untimely, without considering its merits.

¶31    The circuit court properly concluded that Rader's October 9, 2018 summary judgment motion was untimely. WISCONSIN STAT. § 802.08(1) provides that a party may file a summary judgment motion "within 8 months of the filing of a summons and complaint or within the time set in a scheduling order under s. 802.10." Rader filed his October 9, 2018 summary judgment motion more than one year after he filed his summons and complaint. Nothing in the court's September 27, 2018 scheduling order extended the time for Rader to file a summary judgment motion. As such, Rader's October 9, 2018 motion was clearly untimely. Moreover, Rader does not argue on appeal that the motion was timely filed. An appellant's failure to address the grounds on which the circuit court ruled constitutes a concession of the ruling's validity. ***Schlieper v. DNR***, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

¶32 Whether to permit a party to file a summary judgment motion after the eight-month time limit in WIS. STAT. § 802.08(1) has elapsed lies within the circuit court's discretion. *See Lentz v. Young*, 195 Wis. 2d 457, 465-66, 536 N.W.2d 451 (Ct. App. 1995), *overruled on other grounds by Maple Grove Country Club Inc. v. Maple Grove Estates Sanitary Dist.*, 2019 WI 43, ¶¶46-48, 386 Wis. 2d 425, 926 N.W.2d 184. A circuit court also has discretion to impose sanctions based on a party's untimely filing. *Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820. Rader does not develop any argument that the circuit court erroneously exercised its discretion either by failing to extend the time for him to file a summary judgment motion or by striking his untimely motion. Yet again, we will not abandon our neutrality to develop those arguments for him. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25. Instead, for the reasons explained above, we conclude the court properly struck Rader's October 9, 2018 summary judgment motion as untimely.

## III. Rader's other arguments

¶33 We now turn to three additional arguments that Rader appears to raise at various points in his appellate briefs. First, Rader asserts that Acuity lacks clean hands due to a conflict of interest. This argument is undeveloped. The clean hands doctrine refers to "the equitable doctrine that a plaintiff who seeks affirmative equitable relief must have 'clean hands' before the court will entertain his [or her] plea." *S & M Rotogravure Serv., Inc., v. Baer*, 77 Wis. 2d 454, 466, 252 N.W.2d 913 (1977). Rader does not explain why he believes the clean hands doctrine applies in this case, where Acuity is not the plaintiff and is not seeking any affirmative equitable relief. Nor does Rader explain why he believes Acuity's clean hands—or lack thereof—are relevant to the circuit court's rulings on his jurisdictional motion

or his October 9, 2018 summary judgment motion. We therefore decline to address Rader's argument that Acuity lacks clean hands.

¶34     Rader also appears to argue that Pine Ridge and Acuity's answer to his complaint was deficient because it merely denied the allegations in paragraphs four through fifteen of the complaint and "put … Larry Rader to his strictest proof of such allegations." Rader asserts such denials run afoul of WIS. STAT. § 802.02(2), which states that a party "shall admit or deny the averments upon which the adverse party relies" and that denials "shall fairly meet the substance of the averments denied." Rader also asserts "there is no ***strictest proof*** required under [WIS. STAT. § 628.46(1)]," and Pine Ridge and Acuity's answer therefore "imposes a ***higher standard of proof*** on [Rader] in order to be paid under the [Acuity] policy, or ***bad faith*** per se."

¶35     We decline to address this issue because Rader failed to raise it in the circuit court. Rader never moved for a default judgment under WIS. STAT. § 806.02, nor did he move to strike Pine Ridge and Acuity's answer as insufficient under WIS. STAT. § 802.06(6). In addition, Rader did not argue as a basis for any of his summary judgment motions that Pine Ridge and Acuity's answer had failed to join issue. We need not address issues raised for the first time on appeal, and we decline to do so here. *See **State v. Van Camp***, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997).

¶36     Finally, to the extent Rader intends to argue that the circuit court erred by granting summary judgment to Acuity on his bad faith/tortious interference claim, we disagree. The court correctly observed that Rader had not offered any proof of the five elements necessary to establish a tortious interference claim. The court also correctly noted that since filing his complaint, Rader had "argued

exclusively in terms of bad faith." The court therefore stated that to the extent Rader "intended to assert a claim under a theory of tortious interference, it has not been sufficiently developed to be considered." We agree with the court's analysis. In addition, we observe that Rader's appellate briefs do not address the court's decision regarding his tortious interference claim, and he has therefore conceded the validity of the court's ruling on that point. *See Schlieper*, 188 Wis. 2d at 322.

¶37 As for Rader's bad faith claim, the circuit court correctly concluded Rader did not have standing to assert that claim because he was not the named insured under the Acuity policy and was instead a third-party claimant. In *Kranzush*, the plaintiff asked our supreme court to recognize a new type of bad faith claim premised on "liability of the insurer to a third-party claimant for the insurer's failure to settle the claim where the liability of the insured is reasonably clear." *Kranzush*, 103 Wis. 2d at 62-63. The court refused to do so, reasoning:

> The insurer's duty of good faith and fair dealing arises from the insurance contract and runs to the insured. No such duty can be implied in favor of the claimant from the contract since the claimant is a stranger to the contract and to the fiduciary relationship it signifies. Nor can a claimant reasonably expect there to be such a duty, inasmuch as the insurer and the insured are aligned in interest against the claimant. In the absence of any such duty, the third-party claimant cannot assert a claim for failing to settle his claim, and we therefore decline to recognize such a claim for relief under common law tort principles.

*Id.* at 73-74. The court further concluded that no such claim existed "by virtue of statutory or administrative regulatory provisions." *Id.* at 74-83.

¶38 Based on our supreme court's holding in *Kranzush*, the circuit court properly concluded that Rader, a third-party claimant, could not assert a bad faith claim against Acuity, Pine Ridge's insurer. We therefore affirm the court's grant of summary judgment to Acuity on Rader's bad faith claim.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.